## 57995. CREAMER v. THE STATE.

DEEN, Chief Judge.

Jimmy Creamer was indicted, tried and convicted of burglary. He brings this appeal following the denial of his motion for a new trial.

1. In his first three enumerations of error, appellant contends that the trial court erred in overruling his challenge to the array of grand jurors and motion that any further action by the state to procure an indictment against him be continued until the next term of court, and in denying his motion to quash the indictment.

Appellant was first indicted on November 27, 1978.

The trial court subsequently granted his motion to quash the indictment because he was an on-duty police officer at the time of the alleged offense and was not served with a copy of the proposed indictment, given notice of the contemplated action by the district attorney, or given notice and opportunity to appear before the grand jury. At the district attorney's request, the grand jury was reconvened on December 7, 1978. A copy of the proposed indictment, however, was served on appellant's counsel of record on December 5, 1978, and he agreed to have the accused present at the grand jury considerations on December 7. The district attorney claims that appellant was personally served a few minutes before appearing before the grand jury. After the evidence was presented, appellant and his counsel were excused, and the district attorney testified that no further evidence was presented from the time appellant left until he left a few minutes later. This testimony was corroborated by the foreman of the grand jury.

Code Ann. § 27-706 provides: "Before an indictment against a peace officer charging such officer with a crime which is alleged to have occurred while he was in the performance of his duties shall be returned by a grand jury, the rights provided in section 89-9908, relating to certain officials, shall be afforded such officer and such officer shall be notified of such contemplated action by the district attorney of the county wherein the grand jury shall convene." Code Ann. § 89-9908 provides: "A proposed indictment, presentment, or accusation under the preceding section shall specially set forth the merits of the complaint, and a copy thereof shall be served on the accused before it is laid before the grand jury. The accused shall have the right to appear before the grand jury and make such statement, sworn or unsworn, as he shall desire at the conclusion of the presentation of the State's evidence; the accused shall not be subject to examination either direct or cross, and shall not have the right individually or through his counsel to examine witnesses; the accused and his counsel shall have the right to be present during the presentation of all evidence and statements of the accused on the proposed indictment, presentment, or accusation, after which he and his

counsel shall retire from the grand jury room."

Appellant's contention that he did not have adequate notice of the proposed indictment is without merit. There is no statutory time requirement set forth in § 89-9908 and the five-day rule required under Code Ann. § 81A-106 is not applicable as that rule applies to court hearings on motions and an appearance before a grand jury is not a hearing on a motion. See *Knowles v. Knowles,* 125 Ga. App. 642 (188 SE2d 800) (1972). Any defect that might have existed in the service of the motion was waived by his attorney's agreement to the December 7 date and his appearance. There was no evidence to show that appellant was deprived of his right to be present when all the evidence was presented. Both the district attorney and the grand jury foreman testified that no evidence was presented after he left the grand jury room.

Appellant's challenge to the array of grand jurors and his motion to continue appear to be based on the premise that because he was not present when the grand jury considered the first indictment and heard the testimony of GBI agent Dan Rakestraw who did not testify at the second consideration of the indictment, the grand jury was biased against him and he should have had the opportunity to have the proposed indictment considered by a different grand jury who had not previously heard any evidence.

In determining whether or not grand jury proceedings are biased against an accused, it is an unquestioned rule of law that members of a grand jury may not be selected in a manner that discriminates against persons of a particular race or religion. However, "[t]he basic theory of the functions of the grand jury, does not require that grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors. The Sixth Amendment to the Constitution of the United States expressly provides that the trial jury in a criminal case must be 'impartial.' No such requirement in respect to grand juries is found in the Fifth Amendment, which contains the guaranty against prosecutions for infamous crimes unless on a presentment or indictment of a grand jury. It is hardly necessary to be reminded that each of these

Amendments was adopted at the same time as a part of the group consisting of the first ten Amendments. A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members. In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason." United States v. Knowles, 147 FSupp. 19, 21 (1957).

At the hearing on appellant's motion, the foreman of the grand jury testified that he could not remember the exact number of witnesses that appeared at the first consideration of the indictment, but he could remember the presence of Rakestraw, that he could not remember any of the evidence that was presented, and that at the second consideration they found sufficient evidence to return an indictment against Creamer. Although the GBI agent did not appear before the grand jury during their second consideration, he did appear at trial as a witness for the defense and his testimony was favorable to the appellant. As appellant has made no showing whatsoever of any harm resulting from an allegedly biased grand jury, and since we do not believe that the law in Georgia requires a grand jury to be unbiased in the same sense as the petit jury (see Code Ann. § 59-208, Oath of the Grand Jury), we find that the trial court did not err in denying appellant's motions.

2. Appellant also urges error in the denial of his motion to suppress certain articles of personalty because he was arrested without a valid arrest warrant.

The facts surrounding appellant's arrest show that on July 17, 1978, the sheriff of Wilcox County was notified of a warehouse burglary about 4:30 a.m. After arriving in Rochelle, he talked with Jack Chastain, the owner of the business that was burglarized, and Charles Durham, a City of Cordele policeman. The men informed him that they went into the warehouse shortly before midnight and placed marked money in the cash drawer in a box in a storage room under a shelf because money had previously

been found to be missing. They came out of the building, locked the door, checked it to make certain it was locked, and went across the street to watch. Shortly after 4 a.m., they observed Creamer and his son come up to the door, go in the building, stay five or six minutes, and leave. The witnesses reported that they went back into the building, checked the cash drawer and found that $130 in marked bills was missing. The sheriff further testified that he knew that the accused would go off duty as a policeman at 7 a.m., and that he might not be able to locate him after he got off duty. Jack Chastain obtained an arrest warrant from a justice of the peace and the sheriff attempted to serve it on Creamer at 6:15 a.m., but discovered that it was invalid under Code Ann. § 27-102 which requires in part: ". . . that any warrant for the arrest of a peace officer for any offense alleged to have been committed while in the performance of his duties may be issued only by a judge of a superior court, a judge of a state court or a judge of a court of ordinary." Appellant was nevertheless detained and searched and two twenty-dollar bills whose serial numbers matched those listed as missing from the warehouse were found on his person. The sheriff testified that he was unable to obtain a valid arrest warrant because the probate judge was the only person who could issue a warrant in this case, and he lived about ten miles from Rochelle, did not have an office in his home, and that his office at the courthouse did not open until 9 a.m. A second warrant was obtained from the probate judge about 9 a.m.

The state contends that Creamer's arrest was lawful and clearly falls within the third exception to Code Ann. § 27-207 which permits an arrest without a warrant if there is likely to be a failure of justice. We agree with this contention. In view of the sheriff's unimpeached testimony as to his inability to obtain a warrant before the appellant went off duty and the likelihood that he would not be found with the evidence in his possession, there was indeed likely to be a failure of justice. As stated in *Waller v. State,* 134 Ga. App. 886, 887 (216 SE2d 637) (1975), "[t]he crucial question is whether the knowledge of the related facts and circumstances gave the police officer cause and reasonable grounds to believe that the

appellant had committed an offense. If it did, the arrest, without a warrant, was legal, and the motion to suppress on this ground was properly overruled.

"It is the function of the court to determine if the facts upon which the officer acted would warrant a man of reasonable caution to believe that an offense had been committed."

The information upon which the sheriff acted was sufficient to sustain the arrest of the appellant without a warrant when there was insufficient time to obtain a warrant before the appellant went off duty. The trial court did not err in denying appellant's motion to suppress.

3. Appellant next contends that the evidence was purely circumstantial and the trial court erred in overruling his motion for a directed verdict. He contends that to warrant a conviction on purely circumstantial evidence, Code Ann. § 38-109 requires that the proved facts must exclude every other reasonable hypothesis save the guilt of the accused. While we agree with that contention it is inapposite in this case. Appellant has overlooked the fact that the testimony of Chastain and Durham is direct evidence placing him at the scene of the crime. Even if a conviction is based on purely circumstantial evidence, "to sustain the judgment of conviction, the evidence need not exclude *every* inference or hypothesis except the guilt of the accused, but only *reasonable* inferences and hypotheses, so as to justify the inference, beyond a reasonable doubt, of guilt." *Rogers v. State,* 139 Ga. App. 656, 659 (229 SE2d 132) (1976). We find no error in the trial court's denial of appellant's motion for a directed verdict.

*Judgment affirmed. Birdsong and Carley, JJ., concur. Shulman, J., not participating.*

ARGUED MAY 30, 1979 — DECIDED JUNE 22, 1979.

*Morgan & Morgan, David E. Morgan, III, J. Laddie Boatright,* for appellant.

*D. E. Turk, District Attorney,* for appellee.