### 70947. McWILLIAMS v. THE STATE.
### 71135. BOND v. THE STATE.
(339 SE2d 721)

SOGNIER, Judge.

Cary Bond, Melvin McWilliams, Joel Hay, Roberts Engineering Corporation and Roger Bankston were tried for conspiracy to defraud the State. Hay pleaded guilty and in a joint trial by jury of the other defendants Roberts Engineering Corporation and Roger Bankston were found not guilty and Bond and McWilliams were convicted as charged. They filed separate appeals which will be treated together in this appeal.

1. Both appellants contend the trial court erred by overruling their demurrers to the indictment, based on the ground that the indictment alleged that McWilliams, Hay, Roberts Engineering Corporation and Bankston submitted invoices to the Legislative Fiscal Officer for payment totalling $6,013,728.53, representing that the entire amounts were for work performed in renovation of the State Capitol building, and said representations were false. Bond was alleged to have paid such invoices with State monies. Appellants argue that it

could not be determined from the indictment what portion of the amounts billed and paid for with State monies were alleged to be fraudulent. This argument is without merit.

Although paragraph 1 of the indictment specified the total amount of invoices submitted to the Legislative Fiscal Office and paid for with State monies, paragraphs 2 through 8 of the indictment specified the items purchased and the labor billed fraudulently, which were paid for with State monies. Additionally, the specific dates that the fraudulent invoices were submitted and the date payments were made for such invoices is shown in the indictment. Thus, appellants had knowledge of the specific items of personal property and labor covered by the indictment. The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the elements of the offense intended to be charged, and apprises the defendant of what he must be prepared to meet, and if other proceedings are initiated against him, whether the record accurately shows to what extent he may plead a former acquittal or conviction. *Wages v. State*, 165 Ga. App. 587, 588-589 (2) (302 SE2d 112) (1983). The indictment in this case clearly meets this test. Accordingly, it was not error to overrule appellants' demurrers to the indictment.

2. Appellants contend the trial court erred by sustaining the State's objection to a question propounded by McWilliams' attorney to Hay as to why he pled guilty to the indictment but refused to admit facts that would constitute guilt. Appellants argue that it was critical to show that Hay had not admitted facts making him guilty of conspiracy, as the jury had been informed of Hay's guilty plea and the jury "undoubtedly felt" that a conspiracy cannot be committed by one person. This enumeration is not supported by the transcript.

The transcript of the guilty plea hearing shows that Hay admitted all of the overt acts alleged against him and that he had no authority to purchase the items involved and have them paid for by the State. Hay also acknowledged that there was a tacit understanding with at least one of the co-conspirators that Hay would work on Bond's home free of charge, and Hay acknowledged that he had no doubt that the labor cost for the time spent moving Bond's furnishings from his old house to his new house was turned in to the Legislative Fiscal Office as time Hay spent working on the State Capitol building renovation. Thus, it is clear that Hay acknowledged facts constituting the conspiracy charged when he entered his plea of guilty. Additionally, when Hay, a defense witness for a co-defendant, was cross-examined by McWilliams he stated in response to a question by McWilliams' attorney: "Of what I was charged with in the case, to my understanding, was that I had went out and bought those items, and that by doing that, and by Melvin [McWilliams] asking me

to do that, that I had conspired with him to steal from the State. *That was what I pled guilty to.*" (Emphasis supplied.) Hence, appellants' argument that Hay did not understand what he was doing when he pled guilty is not supported by the transcript.

A conspiracy to defraud the State is committed when a person conspires with another to commit theft of any property which belongs to the State or any agency thereof which is under the control or possession of a State officer or employee in his official capacity. OCGA § 16-10-21. It is not necessary for each conspirator to know each detail of the conspiracy or the identity of each co-conspirator. *United States v. Smith*, 700 F2d 627 (11th Cir. 1983). Applying these rules to the testimony of Hay at his guilty plea hearing and when called as a defense witness, Hay acknowledged facts establishing his guilt as charged. Thus, there was no factual basis for the question propounded by McWilliams' attorney and objected to by the State. Additionally, the question propounded by appellant McWilliams' counsel called for an opinion on a question of law, i.e., what facts are sufficient to establish the elements of conspiracy. The opinion of Hay, a lay witness, on that issue is not admissible. *Janney v. Dugger*, 86 Ga. App. 414, 416 (2) (71 SE2d 777) (1952). Accordingly, the trial court did not err by sustaining the State's objection to appellant McWilliams' question.

3. a. Appellants contend the trial court erred by charging the jury on parties to a crime, aiding and abetting, and use of the phrase "or criminal negligence" in the definition of a crime. These contentions have been decided adversely to appellants. *Townsend v. State*, 141 Ga. App. 743, 744 (2) (234 SE2d 368) (1977); *Shehee v. State*, 167 Ga. App. 542 (1) (307 SE2d 54) (1983); *Smith v. State*, 238 Ga. 146, 148 (2) (231 SE2d 757) (1977); *Cherry v. State*, 174 Ga. App. 145, 147 (8) (329 SE2d 580) (1985).

b. Appellants also contend the trial court erred by charging the jury on the offense of theft by deception because it was not a lesser offense of the offense charged, and was confusing and misleading to the jury. We do not agree.

The offense of theft by deception was shown by the evidence to be the object of the conspiracy charged, and the trial court informed the jury that his instruction on theft by deception was simply a way of defining "theft" to them. The charge taken as a whole could not have harmed appellants, and thus, this enumeration of error is without merit. *Amadeo v. State*, 243 Ga. 627, 629 (3) (255 SE2d 718) (1979).

4. Appellant Bond contends the trial court erred by denying his motion for a directed verdict of acquittal because the evidence of a conspiracy was circumstantial and does not exclude every reasonable hypothesis save that of guilt.

The evidence disclosed that in 1981 Bond decided to build a geodesic dome house on property he owned in Rockdale County. After consulting an individual who did consulting work and provided component parts for dome houses, and obtaining a preliminary drawing from an architect, Bond asked appellant McWilliams if he could build the house for him for $100,000. McWilliams said he could and they entered into a written agreement whereby McWilliams would build the house on a cost-plus basis with a "cap" of $125,000. The house ultimately cost $147,000, with McWilliams bearing the loss. In the meantime the Legislative Services Committee directed Bond to get the State Capitol building renovation work done on a "renovate as you go" basis. Accordingly, Bond gave the general contracting job to McWilliams' company, the air conditioning job to Roberts Engineering Company, for whom co-conspirator Joel Hay worked, and gave the electrical job to Control-Control Enterprises. All of these firms or their predecessor companies had been doing repair and renovation work at the State Capitol building for several years without contracts, and entered into the renovation work on a cost-plus basis without written contracts. McWilliams' company originally charged a "plus" of 10 percent, but raised this to 30 percent to get in line with other contractors. Bond did not question the increase.

Bond submitted monthly statements to members of the Legislative Services Committee showing the amounts spent for renovation. The State's auditing department conducted annual audits of Bond's office and had access to all records. After each audit, the auditors gave Bond's office a clean bill of health.

During the course of building Bond's house several items were purchased for Bond's house, two items of equipment were purchased for McWilliams' company, a Snapper riding lawnmower was purchased for Bond, and free labor was provided by Hay and two other individuals to move Bond's household goods and personal property from his old home to his new house. In each instance false invoices were submitted to Bond's office indicating that the items and labor were used in renovation of the State Capitol building. The invoices were approved by Bond and paid for with State monies.

Bond denied any knowledge of the fact that items used in construction of his house were paid for with State monies, or that his house had cost more than the agreed upon price. He also denied knowledge of the fact that other items purchased and certain labor costs were paid for with State monies. He also testified that even had he personally examined each of the thousands of invoices submitted in connection with renovation of the State Capitol building he would not have discovered such facts, as the invoices were falsified and there was no way of determining they were false, as evidenced by the auditor's reports.

Although the evidence is entirely circumstantial as to Bond's participation in a conspiracy to commit theft of State monies, whether the circumstances are sufficient to exclude every reasonable hypothesis save that of guilt of the accused is a question for the jury. *Jones v. State*, 165 Ga. App. 36, 38 (1) (299 SE2d 576) (1983). Whether or not a conspiracy existed is also a jury question, and the existence of a common plan or purpose between two or more persons to commit an unlawful act may be shown by either direct or circumstantial evidence. *Hurt v. State*, 239 Ga. 665, 673 (11) (238 SE2d 542) (1977); *Simpkins v. State*, 149 Ga. App. 763, 768 (3) (256 SE2d 63) (1979). " ' "Conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, the existence of which agreement may be established by direct proof, *or by inference, as a deduction from acts and conduct*, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose." (Emphasis supplied.) [Cit.]' [Cit.]" *Cunningham v. State*, 248 Ga. 835 (1) (286 SE2d 427) (1982). Applying these rules to the instant case, we find the evidence sufficient to meet the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Accordingly, it was not error to deny appellant Bond's motion for a directed verdict of acquittal. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

5. Lastly, appellant Bond contends it was error to deny his plea in abatement to the indictment on the grounds that his indictment was obtained in violation of his right to counsel and his right to face his accuser. He argues that because he was required to change counsel one day before the grand jury presentment through no fault of his own, he had insufficient time to prepare a sworn statement to present to the grand jury, as was his right.

On January 31, 1984 Bond was served personally with a copy of the proposed indictment and Notice of Indictment. The notice informed Bond that the indictment would be presented to the grand jury at 11:00 a.m., February 3, 1984, and also advised Bond that he was entitled to the rights set forth in OCGA §§ 45-15-11 and 45-11-4, including the right to present a sworn statement to the grand jury without being subject to cross-examination. When Bond received Notice of Indictment the attorney who represented Bond during the investigation of his practices believed he (the attorney) might have a conflict of interest resulting from his position as Deputy Attorney General in representing the Georgia Development Authority. Therefore, Bond's attorney spoke with the Attorney General, who stated that in his opinion, the attorney was barred from representing Bond. The attorney decided to withdraw as counsel for Bond and the following day Bond retained his present counsel. On the morning of the grand jury presentment Bond's counsel filed a Motion for Continu-

ance of Grand Jury Presentment in the Superior Court of Fulton County. After hearing argument of counsel the motion was denied. Bond and his counsel were present at the grand jury presentment and after presentation of the State's evidence, Bond's counsel asked for a delay so he could consult with Bond in preparation of his statement. This request was denied and Bond presented no statement.

Bond argues that because his present counsel was retained only one day before the grand jury convened for the presentment of the indictment in this case, and because of the voluminous amount of documentary evidence, he was effectively deprived of his right to counsel and his right to present a sworn statement to the grand jury, as there was insufficient time to prepare. We do not agree.

OCGA § 45-15-11 provides, in pertinent part: "Before an indictment charging any state official with misfeasance or malfeasance in office is presented to a grand jury, the rights provided in Code Section 45-11-4 shall be afforded said official. . . ." OCGA § 45-11-4 provides, in pertinent part: "The accused shall have the right to appear before the grand jury and make such sworn statement as he shall desire at the conclusion of the presentation of the state's evidence. The accused shall not be subject to examination, either direct or cross, and shall not have the right individually or through his counsel to examine the witnesses. The accused and his counsel shall have the right to be present during the presentation of all evidence and statements of the accused on the proposed indictment, . . . after which he and his counsel shall retire from the grand jury room. . . ."

It is undisputed that appellant Bond was afforded all rights set forth in § 45-11-4, including the right to make a sworn statement. Although Bond argues that he was not given enough time to prepare his sworn statement, there is no statutory time requirement set forth in § 45-11-4. *Creamer v. State*, 150 Ga. App. 458, 460 (1) (258 SE2d 212) (1979). Appellant's argument that *Moore v. State*, 64 Ga. App. 171 (12 SE2d 410) (1940), requires that an accused be given a reasonable opportunity and reasonable time to prepare for his appearance before the grand jury is not well taken. At the time *Moore* was decided the statute in effect (then Code Ann. § 89-9908) provided that a public officer appearing before a grand jury had the right to cross-examine the witnesses and present his own witnesses and other matters in explanation and defense. In *Moore* the accused was physically unable to attend the grand jury proceedings held one day after notice of indictment, and we held that under such circumstances the accused was not given a reasonable opportunity and reasonable time to get his witnesses and appear before the grand jury. Under the current statute (OCGA § 45-11-4) an accused has no right to cross-examine witnesses or present his own witnesses. Thus, the facts in *Moore* are clearly distinguishable from the facts in the present case. Bond was not denied

his right to "face his accuser," for he was present, with counsel, during the presentation of witnesses and other evidence during the grand jury presentment. Even if Bond's new counsel was not familiar with all details of the case, Bond himself was familiar with the evidence from the investigation leading up to his indictment, and was given an opportunity to make a sworn statement. Under such circumstances, and absent any statutory time requirement after Notice of Indictment, we find no error in denial of Bond's plea in abatement.

*Judgments affirmed. Birdsong, P. J., concurs. Carley, J., concurs specially.*

CARLEY, Judge, concurring specially.

I concur fully in Divisions 1, 3, 4 and 5 of the majority opinion and in the judgments affirming the convictions of the appellants. However, with regard to Division 2, I agree with neither the majority's characterization of the enumeration nor its resolution thereof. Actually, the thrust of the enumeration is that the trial court improperly abridged the thorough and sifting cross-examination to which every party in a Georgia trial is entitled. While I do believe that, to some extent, the trial court did curtail cross-examination by McWilliams' attorneys, for the reasons which follow, I do not believe that such action by the trial court constitutes reversible error.

At the outset, it should be emphasized that witness Hay was on cross-examination by appellant McWilliams when the trial court sustained the state's objection to the following question: "Well, if I said to you that what you are charged with is a *conspiracy with Mr. Bond* to do the things that I have indicated, would you say that you are guilty of that?" (Emphasis supplied.) A review of the transcript indicates that, prior to this ruling occurring during McWilliams' cross-examination of Hay, Hay had already been subjected to cross-examination on behalf of appellant Bond. During this previous cross-examination by Bond, Hay testified extensively with regard to the events leading up to the entry of his plea of guilty and the reasons which underlay that plea. Hay testified as to his original belief in his innocence but that, notwithstanding his personal belief, he had been persuaded that under the law of conspiracy he was guilty. During that cross-examination, Hay also responded in the negative when he was specifically asked if he believed himself "to be guilty of a conspiracy with Carey Bond to defraud the state?"

During cross-examination by the appellant McWilliams, Hay was again questioned with regard to his part in the alleged conspiracy and during that cross-examination he was asked if he had entered "into an agreement with Carey Bond, Mr. McWilliams, Mr. Bankston, and Roberts Engineering Corporation pursuant to which [he] and the other contractors would build a house for Mr. Bond in exchange for

his agreement to approve any invoices that [they] sent through the fiscal office?" To that question, to which there was no objection, Hay responded: "No sir." He was then asked by McWilliams' counsel whether he was "aware" of "the agreement" which underlay the charges against him "in this case." Hay responded as follows: "Of what I was charged with in the case, to my understanding, was that I had went out and bought those items, and that by doing that, and by [appellant McWilliams] asking me to do that, that I had conspired with him to steal from the State. That was what I pled guilty to." It was then that appellant McWilliams asked the question which is at issue on appeal. As noted, that question concerned whether Hay would say that he was guilty of "a conspiracy with Mr. Bond. . . ."

It appears from a review of the entire transcript that in response to numerous inquiries, Hay denied that he had directly conspired with appellant Bond but that he nevertheless pled guilty to the conspiracy charge as a result of his connection with appellant McWilliams. Both appellants were allowed to pursue this area of inquiry during the respective cross-examinations of Hay. Unquestionably, a party is entitled to a thorough and sifting cross-examination of all witnesses called by other parties. However, the trial court retains a discretion to control the right of cross-examination within reasonable bounds and the appellate courts will not control this exercise of discretion in the absence of a showing of abuse. See generally *Crawford v. State*, 154 Ga. App. 362, 363 (268 SE2d 414) (1980). "It has been held that the exclusion of unnecessarily repetitious questions which have been previously propounded and answered does not constitute an abuse of discretion. [Cits.]" *Johnson v. State*, 137 Ga. App. 308, 309-310 (223 SE2d 500) (1976). Accordingly, it is my opinion that the issue raised by the enumeration discussed in Division 2 of the majority opinion should be resolved on the basis that, in sustaining the state's objection to what appeared to be repetitious cross-examination of Hay, the trial court did not so clearly abuse its discretion as to commit reversible error.

DECIDED DECEMBER 5, 1985 —
REHEARINGS DENIED JANUARY 7, 1986 —

R. Alex Crumbley, for appellant (case no. 70947).
John R. Martin, for appellant (case no. 71135).
Michael J. Bowers, Attorney General, G. Thomas Davis, Special Assistant Attorney General, for appellee.