A08A2421. SMITH v. THE STATE.
(676 SE2d 750)

MILLER, Chief Judge.

A Dooly County jury convicted Leonard Smith on three counts of false statements and writings (OCGA § 16-10-20). Smith appeals from the trial court's order denying his motion for a new trial, arguing that the trial court erred in (i) denying his plea in abatement and motion to dismiss the indictment filed pursuant to OCGA §§ 17-7-52 and 45-11-4; (ii) admitting irrelevant, inflammatory evidence during cross-examination of a defense witness; and (iii) failing to charge the jury on the meaning of the term "knowingly." Finding that Smith did not receive notice of when the proposed indictment against him would be presented to the grand jury, as required by OCGA §§ 17-7-52 and 45-11-4, we vacate the judgment and remand the case to the trial court.

Viewed in the light most favorable to the verdict, the record shows that in September 2005, Smith was interim chief of police for the City of Unadilla, and in January or February 2006, he became the chief of police. When Smith began working for the Unadilla Police Department ("Unadilla Department") in 1999, he was also employed by the Fort Valley Police Department ("Fort Valley Department"). When he accepted employment with the Unadilla Department, Smith gave the Fort Valley Department written notice of his second job.

John Anderson became chief of police in Fort Valley in January 2006. At the time, Smith held a full-time position as sergeant in the

Fort Valley Department. The Fort Valley Department had a policy allowing officers to take part-time jobs elsewhere if the part-time employment was approved in writing by the chief of police. When Anderson became chief, he "grandfathered" in the previously-granted part-time authorizations. When Anderson learned that Smith was serving as chief of police in Unadilla, however, Anderson asked Smith about his second job. Smith assured Anderson that he was serving as chief in an interim capacity and that his employment in Unadilla would not interfere with his job in Fort Valley.

Fort Valley police officers are responsible for filling out the time cards documenting when they work. Smith's pay was dependent on the hours he submitted, and it was unacceptable for Smith to be on the clock at the same time in Fort Valley and Unadilla. In April 2006, Anderson received a complaint about Smith's timekeeping. The complainant turned over photocopies of payroll records from Unadilla, and Anderson compared those records with Fort Valley's records and prepared a spreadsheet to determine whether there were any time overlaps. Anderson discovered several possible irregularities. For example, on December 9, 2005, Smith had a four-hour time entry in Fort Valley that overlapped with a thirteen-hour time entry in Unadilla.[1] Anderson also discovered an overlap on January 20, 2006.[2]

After examining the time records, Anderson sat down with Smith, showed Smith his spreadsheet, and advised Smith that he had discovered some irregularities. Anderson told Smith that the Fort Valley Department was not prepared to take disciplinary action but that he wanted to see if Smith could explain any of the discrepancies. In response, Smith tendered his resignation on the spot.

Thereafter, Special Agent Michael McDaniel of the Georgia Bureau of Investigation ("GBI") began an investigation into the matter. Like Anderson, McDaniel discovered a number of discrepancies in Smith's time cards. McDaniel met with Smith on July 13, 2006 to discuss his findings. When McDaniel asked Smith about a discrepancy in Smith's time cards on October 3, 2005,[3] Smith advised him that the initials on the Unadilla time card were not his and that he had not signed the card. Smith stated that he had not signed or

---

[1] Anderson determined that Smith had been in training that day. The Fort Valley Department pays its officers to go to training, but they are not allowed to be paid by another police department at the same time.

[2] Smith's time cards showed that he was on the clock in Fort Valley from January 19 at 6:00 p.m. until January 20 at 8:00 a.m. The Unadilla time cards, however, showed that Smith clocked in at 5:42 a.m. on January 20 and worked until 5:57 p.m.

[3] The time cards showed that on October 3, 2005, Smith clocked in at the Unadilla Department at 8:00 a.m. and worked until 8:00 p.m. On the same day, Smith clocked in at Fort Valley at 5:45 p.m. and worked until October 4 at 6:00 a.m.

initialed a number of other time cards McDaniel showed him and claimed that they had been "doctored." In light of Smith's claims that he had not signed the time cards, McDaniel asked Smith if he would provide handwriting samples. Smith agreed, and McDaniel arranged to pick up the samples the following day. During their second meeting, Smith inquired about the status of McDaniel's investigation, and McDaniel told Smith that it was not looking good because "[y]ou can't be in two places at one time." Smith began crying and claimed that Unadilla owed him money and that it all "equals out." Smith, however, continued to deny signing a number of time cards. Arthur Anthony, a GBI handwriting expert, analyzed Smith's handwriting samples and the disputed time cards and determined that the signatures in question were Smith's.

On January 11, 2007, an investigator from the Dooly County Sheriff's Office served Smith with a copy of a proposed indictment charging him with seven counts of false statements and writings. The indictment indicated on its face that it was to be presented during the January term. A grand jury returned the indictment on January 29, 2007. On February 23, 2007, Smith filed a plea in abatement and motion to dismiss the indictment on the ground that he was not informed when the proposed indictment would be presented to the grand jury. During the hearing on the motion, Smith's attorney explained that the investigator who served the indictment on Smith told Smith that he should call the district attorney, but "that was the end of the contact as far as the provision of the indictment." Smith's counsel further represented that Smith "had no knowledge of when the grand jury was going to take up the indictment. . . ." The trial court denied the plea in abatement and motion to dismiss the indictment.

1. Smith contends that the trial court erred in denying his plea in abatement and motion to dismiss the indictment filed pursuant to OCGA §§ 17-7-52 and 45-11-4. We agree.

OCGA § 17-7-52 (a) states:

Before an indictment against a present or former peace officer charging the officer with a crime which is alleged to have occurred while he or she was in the performance of his or her duties is returned by a grand jury, the officer shall be notified of the contemplated action by the district attorney of the county wherein the grand jury shall convene and the officer shall be afforded the rights provided in Code Section 45-11-4.

OCGA § 45-11-4 (f), provides, among other things, that "[a] copy of the proposed bill of indictment shall be served on the accused public

officer at least 15 days before it is presented to the grand jury." OCGA § 45-11-4 (g) further states:

> The accused shall have the right to appear before the grand jury to make such sworn statement as he or she shall desire at the conclusion of the presentation of the state's evidence. The accused shall not be subject to examination, either direct or cross, and shall not have the right individually or through his or her counsel to examine the state's witnesses. The accused and his or her counsel shall have the right to be present during the presentation of all evidence and alleged statements of the accused on the proposed indictment, presentment, or accusation, after which the accused and his or her counsel shall retire instanter from the grand jury room to permit the grand jury to deliberate upon the indictment.

It is undisputed that the State served Smith with a copy of the proposed indictment more than 15 days before it was presented to the grand jury, as required by OCGA § 45-11-4 (f). The issue before us is whether Smith was entitled to notice of when the proposed indictment would be presented to the grand jury. We find that he was.

As an initial matter, we note that while our prior cases have not squarely addressed the issue of whether OCGA §§ 17-7-52 and 45-11-4 entitle a police officer to notice of when an indictment will be presented to a grand jury, we recently indicated in dicta that some notice of the grand jury proceedings is required. See *Brandeburg v. State*, 292 Ga. App. 191, 196 (3) (663 SE2d 844) (2008) (rights under OCGA §§ 17-7-52 and 45-11-4 include: "*notice of the grand jury proceedings*, a copy of the indictment, the opportunity to be present during the presentation of evidence, and the right to make a statement to the grand jurors.") (emphasis supplied).[4] Further, several prior cases indicate that, as a practical matter, the State often

---

[4] See also *State v. Young*, 260 Ga. App. 44, 46 (1), n. 1 (579 SE2d 16) (2003) ("Only peace officers and public officials are entitled to *notice and the opportunity to appear before the grand jury*. OCGA §§ 17-7-52; 45-11-4 (f), (g).") (emphasis supplied); *Creamer v. State*, 150 Ga. App. 458 (258 SE2d 212) (1979) (noting that trial court granted defendant's motion to quash first indictment "because [defendant] was an on-duty police officer at the time of the alleged offense and was not served with a copy of the proposed indictment, given notice of the contemplated action by the district attorney, *or given notice and opportunity to appear*") (emphasis supplied) (rejecting defendant's argument that he did not receive adequate notice of indictment where indictment was served just two days prior to presentment); but see *Popham v. State*, 138 Ga. App. 876, 880-881 (5) (227 SE2d 825) (1976) (stating, "the defendant's motion affirmatively shows that the defendant was served with a copy of the proposed indictment prior to its being laid before the grand jury. This satisfies the notice requirements of the statute," but also noting, "[i]n addition, the defendant was given notice of the time and place of convening the

notifies the defendant of when the indictment will be presented. *McWilliams v. State*, 177 Ga. App. 447, 451 (5) (339 SE2d 721) (1985) (notice of indictment "informed [defendant] that the indictment would be presented to the grand jury at 11:00 a.m., February 3, 1984") (defendant not denied rights under OCGA § 45-11-4 despite fact that his counsel withdrew and he retained new counsel just one day before presentment).[5]

We now hold that when an individual is entitled to the protections of OCGA §§ 17-7-52 and 45-11-4, the State must provide notice of when the proposed indictment will be presented to the grand jury. We begin our analysis with the propositions that this Court's "construction [of statutes] must square with common sense and sound reasoning," and we "may decline to give a legislative act such construction as will attribute to the General Assembly an intention to pass an act which is not reasonable, or as will defeat the purpose of the proposed legislation." (Citation and punctuation omitted.) *Tuten v. Brunswick*, 262 Ga. 399, 404 (7) (a) (418 SE2d 367) (1992). The State contends that its sole obligation under OCGA § 45-11-4 was to serve Smith with a copy of the proposed indictment at least 15 days before the grand jury met and that it was then incumbent on Smith to appear with counsel, if he chose to do so. We find this position untenable. While OCGA § 45-11-4 does not expressly require the State to notify the accused of when an indictment will be presented to the grand jury, to hold that such a requirement does not exist would lead to unreasonable results and defeat legislative intent.

OCGA § 45-11-4 extends certain due process rights to covered public officials not provided to citizens in general. *In re Floyd County Grand Jury &c.*, 225 Ga. App. 705, 709-710 (3) (484 SE2d 769) (1997); see also *Thompson v. Macon-Bibb Hosp. Auth.*, 246 Ga. 777, 778, n. 1 (273 SE2d 19) (1980). Specifically, the statute confers on certain public officials,

> a right . . . of explaining their conduct [to the grand jury], so

---

grand jury") (defendant not denied rights under predecessor to OCGA § 45-11-4 by virtue of fact that State failed to advise him whether he would be permitted to appear before the grand jury and when the State's presentation of evidence would conclude).

[5] See also *Creamer*, supra, 150 Ga. App. at 459 (when proposed second indictment was served on defendant's counsel, counsel agreed that defendant would appear before grand jury two days later); *Moore v. State*, 64 Ga. App. 171, 171-172 (12 SE2d 410) (1940) (notice of proposed indictment stated: "The within and foregoing indictment is to be laid before the grand jury of Clayton County at the November term, 1939, on Tuesday November 28, 1939 at nine o'clock a.m. . . .") (trial court erred in dismissing plea in abatement under predecessor to OCGA § 45-11-4 when State served indictment one day prior to presentment and defendant was physically unable to attend court on date of presentment).

that if the case [is] one without foundation, they should not be annoyed by being required to defend, and (what is more important) should not be injured in the public estimation, or their public efficiency be impaired, while resting under a baseless charge.

*Dyer v. State*, 7 Ga. App. 58, 58-59 (65 SE 1089) (1909) (discussing predecessor statute); *State v. Deason*, 259 Ga. 183, 184 (378 SE2d 120) (1989) (rationale of OCGA § 45-11-4 is that government officials require protections of statute lest "their reputation and efficiency in office . . . be impaired while defending baseless charges") (citations omitted). The intent of OCGA § 17-7-52 is "to afford to police officers the same procedural protection afforded to other public officials" under OCGA § 45-11-4. *Mize v. State*, 152 Ga. App. 190 (262 SE2d 492) (1979). The fundamental goal of OCGA §§ 17-7-52 and 45-11-4, affording police officers and public officials an opportunity to fend off potentially baseless charges prior to indictment, cannot be fulfilled if the accused does not know when the indictment will be presented. While OCGA § 45-11-4 is silent as to how the accused should obtain that information, we find that the burden of providing such notice implicitly and logically falls to the State.

The State does not dispute Smith's contention that the district attorney's office exercises control over its calendar of activities before the grand jury. Nor does the State credibly explain how Smith could have ascertained when the proposed indictment would be presented to the grand jury without obtaining that information from the State.[6] The State argues that pursuant to OCGA § 15-6-3 (13) (C), Smith was on notice that the January term of the Dooly County Superior Court began on the fourth Monday of January. The January term, however, extended through April, and the State does not explain how Smith should have known which day he should appear in order to exercise his statutory rights. The State also asserts that Smith, as a police chief, "had access to the court system above and beyond that of an ordinary, uninformed citizen," but this generality does not establish that Smith could have learned the date and time when the proposed indictment would be presented.[7] Under such circumstances, we cannot conclude that the General Assembly

---

[6] At the hearing on the plea in abatement and motion to dismiss the indictment, the prosecutor stated that the Assistant Chief of the Unadilla Police Department was subpoenaed to the grand jury but did not assert that Smith had notice of that subpoena.

[7] The prosecutor also represented that the district attorney's office "sends a copy of the Court's calendar to every law enforcement agency within our circuit when it's published, so that the departments have notice as to when all the grand juries and arraignments and court

intended to absolve the State of any responsibility of informing a public official or police officer when an indictment would be presented. The protections of OCGA §§ 17-7-52 and 45-11-4 would be undermined if the State could simply furnish the accused with a proposed indictment and hope that he or she would not know or be able to discover when the indictment would be presented. Receiving the proposed indictment confers little benefit unless the accused, after reviewing it, has the opportunity to explain his or her position to the grand jury.

Our interpretation of OCGA §§ 17-7-52 and 45-11-4 is consistent with fundamental principles of due process. The "central meaning" of procedural due process is that "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." (Citations and punctuation omitted.) *Fuentes v. Shevin*, 407 U. S. 67, 80 (IV) (98 SC 1983, 32 LE2d 556) (1972). We agree with Smith that an implied right to notice of when an indictment will be presented is necessary to effectuate a police officer's right to appear and be heard before a grand jury pursuant to OCGA §§ 17-7-52 and 45-11-4. See *Cadle v. State*, 101 Ga. App. 175, 181-184 (2) (113 SE2d 180) (1960) (while predecessor to OCGA § 45-11-4 did not expressly provide that official had right to counsel before grand jury, right was implicit and consistent with certain guarantees under Georgia and federal constitutions); see also *Robitzsch v. State of Ga.*, 189 Ga. 637 (7 SE2d 387) (1940) (statute provided for notice and hearing by necessary implication). Because the State failed to notify Smith when the proposed indictment would be presented, we conclude that Smith's convictions must be set aside. See *Wiggins v. State*, 280 Ga. 268, 272 (2) (626 SE2d 118) (2006).

In view of the fact that Smith may be re-indicted for the offenses of which he was convicted (see OCGA § 17-7-53.1), we address Smith's remaining enumerations of error because they are likely to arise in the event the case proceeds again to trial.

2. Smith claims that the trial court erred in overruling his counsel's relevancy objection to the State's cross-examination of a defense witness, Unadilla City Council member Dexter Whittaker, about certain expenses he submitted to the city for reimbursement following a trip he and other city council members took to Washington D.C. We disagree.

OCGA § 24-9-64 provides that "[t]he right of a thorough and sifting cross-examination shall belong to every party as to the

---

terms are for their scheduling purposes. . . ." This calendar is not in the record, however, and the prosecutor did not state that the calendar indicated when the indictment against Smith would be presented.

witnesses called against him." See also *Cosby v. State*, 234 Ga. App. 723, 724 (1) (507 SE2d 551) (1998).

> The purpose of cross-examination is to provide a searching test of the intelligence, memory, accuracy, and veracity of the witnesses, and it is better for cross-examination to be too free than too much restricted. Wherever the purpose is to impeach or discredit the witness, great latitude should be allowed by the court in cross examinations.

(Citations and punctuation omitted.) *Snelling v. State*, 215 Ga. App. 263, 265 (1) (a) (450 SE2d 299) (1994). "The right to a 'thorough and sifting cross-examination' . . . includes the right to impeach the witness by revealing possible biases or prejudices concerning issues in the case." (Footnotes omitted.) *Baird v. State*, 260 Ga. App. 661, 665 (3) (580 SE2d 650) (2003).

Despite admitting that he was due reimbursement for items such as meals and transportation, Whittaker sought reimbursement for, among other things, shirts and a pair of "Hello Kitty" shoes he purchased at South DeKalb Mall and various souvenirs. The State's cross-examination was relevant to challenge the competency and credibility of Whittaker's testimony on direct examination that Smith's dual employment in Unadilla and Fort Valley was not problematic and Whittaker's assertions on cross-examination that he was a careful steward of city money and, further, that he did not believe Smith did anything wrong. The trial court did not abuse its discretion in permitting such cross-examination. *Baird*, supra, 260 Ga. App. at 665 (3).

3. Finally, Smith argues that the trial court erred in failing to instruct the jury regarding the definition of the term "knowingly." We disagree.

"The charge to the jury is to be taken as a whole and not out of context when making determinations as to the correctness of same." (Punctuation and footnote omitted.) *O'Connor v. State*, 255 Ga. App. 893, 896 (2) (d) (567 SE2d 29) (2002). "[I]t is not error to refuse to give a requested charge when the same principles are fairly given to the jury in the general charge of the court." (Punctuation and footnote omitted.) *Green v. State*, 240 Ga. App. 774, 776-777 (1) (525 SE2d 154) (1999).

Smith requested that the trial court instruct the jury that "the term 'knowingly' as used in the indictment in this case includes knowledge of the falsity of the statement." While the trial court did not give this charge, it defined the offense of false statements and

writings as follows:

> A person who *knowingly* and wilfully falsifies, conceals, or covers up by any trick, scheme or device a material fact; makes a false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document, *knowing the same to contain any false, fictitious or fraudulent statement or entry* in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city or other political subdivision.

(Emphasis supplied.) This charge adequately instructed the jury that knowledge of a statement's falsity was an element of the offense the State must prove. *Helton v. State*, 284 Ga. App. 777, 780 (2) (b) (644 SE2d 896) (2007).

Further, the trial court instructed the jury on the State's burden of proving that Smith acted with criminal intent. The trial court's charge on criminal intent "was sufficient to inform the jury that in order to convict, it had to find that [Smith] intended to make the false statements," and "[i]mplicit in such intent is knowledge of the falsity." *Tidwell v. State*, 216 Ga. App. 8, 12 (4) (453 SE2d 64) (1994); *Mitchell v. State*, 233 Ga. App. 92, 95 (5) (503 SE2d 293) (1998).

For the reasons set forth above in Division 1, the trial court's judgment is vacated, and the case is remanded to the trial court for proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 16, 2009 —
RECONSIDERATION DENIED APRIL 3, 2009

*Stephen N. Hollomon*, for appellant.
*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.

