## 3586. GARNETT *v.* THE STATE.

1. A plea in abatement, setting up that a member of the grand jury who returned the indictment was also a member of the firm whose store was alleged to have been burglarized, is insufficient in law.

2. A point not insisted on in the brief of counsel for the plaintiff in error will be treated as abandoned.

3. Where, in a chain of evidence fixing unmistakable guilt on the accused, there is one link consisting of his own incriminatory admission leading to the discovery of other independent circumstantial evidence, the incriminatory admission, together with the circumstances, should go before the jury, even though it appear that the incriminatory admission was induced by promise of immunity from prosecution.

4. The corpus delicti was sufficiently proved by the circumstantial evidence, coupled with the incriminatory admissions of the accused.

5. While, from some of the numerous grounds of the motion for a new trial, complaining of the admission of evidence, there appears some hearsay and some irrelevant testimony, it also appears that the defend-

ant was not prejudiced thereby; and the trial being otherwise free from error and the evidence strongly indicative of guilt, this court would not be justified in reversing the judgment overruling the motion for a new trial.

6. The venue was sufficiently proved.

7. The charge was full and fair, and covered the written requests, in so far as they were appropriate to the issues in the case.

DECIDED NOVEMBER 20, 1911.

Indictment for burglary; from Richmond superior court—Judge H. C. Hammond. June 24, 1911.

*Isaac S. Peebles Jr.,* for plaintiff in error.

*J. S. Reynolds, solicitor-general, John M. Graham,* contra.

RUSSELL, J. Garnett, who, at the time of the transaction set out below, was a policeman of the city of Augusta, was convicted of the offense of burglary, and sentenced to seven years' imprisonment. Some time in 1907 it was reported to the prosecutor, J. J. O'Connor, a member of the firm of Rice & O'Connor Shoe Company, that there was a lot of his shoes in a certain cellar. The matter was investigated by the police department of the city, and, having cause to suspect the defendant, his locker at the police barracks was examined, and therein was found a pair of ladies' shoes, which were identified by the prosecutor as shoes from his stock. The defendant was then sent for, and, in an interview which followed between him and the prosecutor, at which several other witnesses were present, he admitted that he had taken the shoes from the prosecutor's store one night, by using a key with which he effected an entrance through the front door. He further admitted that he had taken about $250 worth of shoes from the same store, and thereupon agreed to pay $150 in settlement of the matter, to which the prosecutor assented. Whether the money was ever paid does not clearly appear, but it is fairly inferable from the testimony that it was not. The evidence does show that about a dozen pairs of shoes were returned by the defendant to the prosecutor, and that these shoes were clearly identified as shoes sold only by the prosecutor's firm at Augusta, and of their brand, size, and mark. After the conversation in which the defendant admitted that he had effected the entrance into the store with a key, the prosecutor met him in the street and asked him for the key, and was given by him a key with which the prosecutor afterwards unlocked the door of the store. The shoes returned by the defendant were kept at

the house of a fortune-teller, with whom he was intimate. Shortly afterward the defendant fled from the State, and he remained in hiding for three years.

It appears that, at the first interview between the prosecutor and the defendant, the prosecutor promised not to hurt a hair of the defendant's head if he would tell the truth about the matter, and further promised to help him hold his position on the police force. Relying on these promises of immunity from punishment, and hope of being rewarded by retention in his position, the defendant made the admissions, and undertook, by causing the return of goods, to make satisfactory restitution and settlement of the matter. In his statement at the trial he denied all guilt, and explained his admissions previously made by saying he was trying to shield the fortune-teller, who feared trouble with the police because she had not paid her license fee. He accounted for his flight by saying that, after the matter was given publicity, he noted that public opinion was so strong against him that, under the advice of his attorney, he fled from the State until sufficient time had elapsed to insure his having a fair trial, when he voluntarily returned and surrendered.

1. Before pleading to the merits, the defendant filed a plea in abatement, on two grounds, the first of which was that it appeared that J. J. O'Connor, a member of the firm whose store was alleged to have been burglarized, was a member of the grand jury by whom the presentment was found. There was a day when parties litigant were wholly incompetent as witnesses; the reason of the law at that time being that their interest in the result of the case was such as to make their testimony of no probative value. It is a far cry from that day to this, when usually the only, and certainly the most important, witnesses in every case are the parties litigant themselves, whose testimony is admitted to the jury, to have such weight as that tribunal may see fit to give it. No less interesting is the change as to the qualification of a juror as a witness. There was once a time in our law when, after retiring to the jury-room, jurors could administer the oath to one another, hear their own evidence as to the transaction in issue, and bring in a verdict on the evidence thus adduced, out of the hearing of judge, lawyers, and parties litigant. In this day and time the verdict must be based on the evidence as heard from the witness-stand, and a juror is

expressly forbidden to act on his own private knowledge of the transaction, unless he is sworn and examined as a witness in the case.  Civil Code (1910), § 5932.  Thus do our notions of things change.  But we have not yet reached the point that we are willing for a juror to act as a judge in his own case, and still recognize that a party and his relatives are not qualified to sit in the petit-jury box.  The person from whom goods are alleged to have been burglarized sustains such a relation to the State's side of a criminal case that he would be incompetent as a petit juror.  But the grand jury is merely a court of inquiry, and the disqualification of a grand juror for such a cause can not be taken advantage of by plea in abatement.  The reasons for this rule are well stated in the recent case of *Hall* v. *State,* 7 *Ga. App.* 115 (66 S. E. 390).  We conclude, therefore, that the judge did not err in holding that the plea in abatement was insufficient in law in this particular.

2.  The second point raised by the plea in abatement relates to whether or not the indictment was indorsed by the grand jury as the law requires.  The brief of the plaintiff in error makes no reference to this point, and we assume, therefore, that it has been abandoned.  *Groves* v. *State,* 8 *Ga. App.* 690 (3), (70 S. E. 93).

3.  The motion for a new trial, as amended, contains 39 grounds, all of them presenting, in a little different way for the most part, the same general questions.  The first one we shall discuss is whether or not the court erred in admitting the alleged incriminatory admissions of the defendant.  It is ably and earnestly argued before us that it appears from the State's own evidence that the admissions were not freely and voluntarily made, but were induced by hope of reward, based on promises of the persons receiving the admissions.  We are inclined to believe that able counsel fails clearly to delimit the difference between a confession and an incriminatory admission.  A confession not freely and voluntarily made should be rejected.  The reason for this rule has been stated so many times and is so well known that restatement here would be useless redundancy.  On the other hand, where the reason fails, the rule ceases.  Where, in the chain of evidence fixing unmistakable guilt on the accused, there is one link, consisting of his own admission, which makes the chain complete, the law in its wisdom does not reject that link as useless, but permits it to go before the jury, not as a confession, but merely as a circumstance,

which, together with the other evidence in the case, tends to prove the guilt of the accused. *Daniels* v. *State*, 78 *Ga.* 99 (3), 103, 104 (6 Am. St. Rep. 238).

Where, therefore, in making a confession which comes up to the full requirements of the law in all particulars, save that it was not full, free, and voluntary, the defendant discloses a clue which leads to other extraneous evidence tending to incriminate him, the evidence thus disclosed, together with the particular part of the admissions of the defendant relating thereto, is admissible. This was just what happened in the case at bar. It is true that, before making the alleged confession, the defendant, a policeman, thought he had securely intrenched himself behind promises which would forever keep closed the mouths of the persons in whose presence he was speaking. It is often said, however, that a little learning is a dangerous thing, and the truth of the maxim is well illustrated in the case at bar. The experience of a policeman is such that he must soon become acquainted with the general principle that a confession not voluntarily made can not be used against the confessor. Few of them, however, would have occasion to know the limitation on this principle to which allusion has been made. If the defendant had been content to remain intrenched behind the general principle, he would have been safe; but he went further, and disclosed clues which resulted in the unearthing of extraneous evidence which weaved about him a web so strong that even the most incredulous of all the doubting Thomases would not call for confirmation. There are the ladies' shoes in his locker at the police barracks, positively identified as having come from the stock alleged to have been burglarized; there is the key, found in his possession, with which he says he opened the door and which proved to fit it; there are the lot of shoes of the same kind, with the private mark and identified as sold at Augusta only by this firm, which never in the memory of the senior member had sold so large a quantity at retail to one person; there is the fortune-teller, with whom the defendant was intimate, and at whose house he directed the negro hackman to call for the shoes and return them to the firm, from whom he says he had taken them; there is the defendant's flight from the State—all these circumstances tending to show his guilt, and his own statements fitting in so well with the other indicia of guilt. The judge properly, therefore, received in evidence these

8

incriminatory admissions, and correctly charged the jury as to the rules of law governing such evidence. *Rusher* v. *State,* 94 *Ga.* 365 (21 S. E. 593, 47 Am. St. Rep. 175) ; *Pines* v. *State,* 21 *Ga.* 227 (3) ; *Dixon* v. *State,* 116 *Ga.* 186 (3), (42 S. E. 357) ; *Way-caster* v. *State,* 136 *Ga.* 95 (70 S. E. 885).

4. The next point urged is that the corpus delicti was not sufficiently proved. It appears that the shoes were not missed from the stock at the time of the alleged burglary, and that the only evidence that a crime had been committed was that adduced after suspicion had pointed to the defendant and the investigation resulted in the disclosure of the clues which led to his admission, which in turn unearthed other circumstances of guilt. We are aware of the rule that a confession uncorroborated is not sufficient proof of the corpus delicti; but we are also cognizant of the counter proposition that the corpus delicti, may be proved by circumstantial evidence; coupled with an incriminatory admission of the defendant. The jury were authorized to infer from the evidence, direct and circumstantial, that the store had been burglarized and that the defendant was the burglar; and, after all, this is what corpus delicti means.

5-7. Various other grounds of the amended motion complain that the court erred in admitting certain testimony over the defendant's objection that it was hearsay or irrelevant. A careful examination of each ground, together with the record as a whole, fails to disclose any error so prejudicial to the defendant as to justify a new trial. We are inclined to believe that some of the evidence which was admitted possessed such a slight degree of relevancy, if relevant as all, that it might properly have been rejected; and that in one or two instances the judge allowed a little hearsay evidence of slight relevancy to creep in; but in a case so free from other material error, and one wherein the proof is so strongly indicative of guilt, the admission of harmless irrelevant or hearsay testimony is not cause for a new trial. The venue was properly proved. The requests to charge, so far as pertinent and appropriate, were covered by the general charge.                    *Judgment affirmed.*