## FARRAR *v.* THE STATE.

No. 12574. JANUARY 10, 1939.

*C. D. Rivers* and *Maddox, Matthews & Owens,* for plaintiff in error.

*J. Ralph Rosser, solicitor-general* and *Walter B. Shaw,* contra.

DUCKWORTH, Justice. ■ If the relationship set out in the plea in abatement constitutes a disqualification "propter defectum," the plea was good, and it was error to dismiss the plea. On the other hand, if it was a disqualification "propter affectum," the plea in abatement would not lie, and it was properly dismissed. The former stands upon grounds that render the juror disqualified to serve as such in any case, and the latter upon grounds that disqualify him only in the case involved. See 28 C. J. 770; *Wright* v. *Davis,* 184 *Ga.* 846 (193 S. E. 757). It is not contended that the jurors whose competency is attacked were disqualified to serve as such in said court, except upon the ground of relationship that disqualified them in the instant case. It follows that the disqualification, if any, was one "propter affectum," and, as has been held by this court, the plea in abatement could not be maintained. *Bitting* v. *State,* 165 *Ga.* 55 (139 S. E. 877). But counsel for the plaintiff in error contend that by reason of the provision of the act approved March 28, 1935 (Ga. L. 1935, p. 396), that "all judges, grand and trial jurors in the courts of this State, shall be disqualified to preside, act, or serve, in any case or matter, when such judge or juror is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree," the relationship of a grand juror who returns an indictment constitutes a legal basis for a plea in abatement or motion to quash the indictment, and that the ruling in the *Bitting* case, supra, is not now controlling. We can not agree to this contention; for, as we construe it, the act cited does not seek to change the law on the subject otherwise than to reduce the degree of relationship which disqualifies a grand juror, from the ninth to the sixth degree. It does not purport to say how such disqualification

shall be raised, nor does it indicate the result if one so disqualified actually serves. The *Bitting* decision deals fully with the question, pointing out why the fact that a grand juror was related within the prohibited degree would not constitute ground to quash the indictment or sustain a plea in abatement, while the fact that a trial juror was so related would be ground for a new trial. As was pointed out there, a grand jury determines "merely whether there is sufficient evidence to require a legal investigation as to the guilt of the particular person accused of crime," whereas a trial jury convicts and thereby says a crime has been committed by the particular person charged. In the *Bitting* case the juror involved was related within the prohibited degree; likewise were the grand jurors in the instant case. It was there held that a plea in abatement could not be sustained because of such relationship; and that decision is controlling here. It was not error to sustain the demurrer and dismiss the plea in abatement.

■ The demurrer attacking the statute (Code, § 13-9910) because of uncertainty and indefiniteness is without merit. The due-process provision of the constitution of the United States, fourteenth amendment (Code, § 1-815), and in art. 1, sec. 1, par. 3, of the State constitution (§ 2-103), is not violated by the statute here involved, for any of the reasons assigned in the demurrer. The crime there defined is described with sufficient particularity to enable one working in a bank to know when he is violating it. This is especially true when the statute requires proof not only of the acts or failures to act therein named, but also an intention to defraud, before a conviction can be had for violating the statute. In Omaechevarria v. Idaho, 246 U. S. 343 (38 Sup. Ct. 323, 62 L. ed. 763), a statute of the State of Idaho making criminal the grazing of sheep on a Federal domain or range, previously occupied by cattle, or usually occupied by cattle raisers, was attacked as repugnant to the due process guaranteed by the fourteenth amendment of the Federal constitution, in that it failed in definiteness and was vague and uncertain; that it failed to provide for the ascertainment of the boundaries of the range or the method of determining what length of time is necessary to constitute a prior occupation, a usual one within the meaning of the statute. In the opinion delivered by Mr. Justice Brandeis it was said, "It is also urged that the Idaho statute, being a criminal one, is so indefinite

in its terms as to violate the guarantee by the fourteenth amendment of due process of law, since it fails to provide for the ascertainment of the boundaries of a 'range,' or for determining what length of time is necessary to constitute a prior occupation a 'usual' one within the meaning of the act. Men familiar with range conditions and desirous of observing the law will have little difficulty in determining what is prohibited by it. Similar expressions are common in the criminal statutes of other States. This statute presents no greater uncertainty or difficulty, in application to necessarily varying facts, than has been repeatedly sanctioned by this court." The language of Mr. Justice Brandeis is strikingly applicable in the instant case. No one working in a bank and familiar with the records thereof could have serious doubt as to what constituted "material" entries on the records and books of the bank. The statute under attack was not intended to regiment the banking business by dictating what particular system of records it must keep. Rather the purpose of this law is to afford protection both to the bank and the public doing business with and trusting the bank against fraudulent acts of the employees of the bank. Since the acts prohibited by the statute do not, under the provisions of the statute, constitute a crime unless done with "fraudulent intent," it is amply definite to enable any one desirous of obeying the law to determine without difficulty when they are violating it. See Hygrade Provision Co. v. Sherman, 266 U. S. 497 (45 Sup. Ct. 141, 69 L. ed. 462). The other part of the demurrer, attacking the sufficiency of the indictment, and alleging that it lacked definiteness and certainty, was without merit. Code, § 27-701. It was not error, for any of the reasons urged, to overrule the demurrer.

■ The evidence failed to support the verdict. It in no wise showed any duty of defendant to make the entry omitted, or that one charged with such duty knowingly failed to perform the same, with the knowledge and approval of defendant. The evidence is fatally lacking in both of these respects. The evidence showed conclusively that it was no part of defendant's duties in said bank to make book entries of any kind, consequently none of his duty to make the entry involved here. It also showed conclusively that no other employee of said bank knew of the omission or failure to make such entry, thus making it impossible for the defendant to be guilty of aiding or abetting, or even concurring in the omission

406

to make such entry by one under duty to make it. It is clear, therefore, that the verdict is unsupported by the evidence, and for this reason it was error to overrule the motion for a new trial. We are clearly supported in the construction we are here giving to § 13-9910 by the provisions elsewhere of the act of which said section of the Code is but a part. § 13-9918, which is a part of the same act, makes explicit provision for conduct of an employee of a bank, such as this defendant is shown by the evidence to have committed. The latter section makes criminal the act of any officer, director, agent, clerk, or employee of a bank, "who with intent to defraud omits to make on its books of account a full and true entry of any money or property of the bank received or possessed by him, or who with such intent causes such omission." If the defendant committed any crime, it was under this section, and to have indicted him thereunder it would have been necessary to expressly charge in the indictment that he received or possessed money or property of the bank, and with intent to defraud such bank omitted or caused others to omit to make a true and full entry of same on the records. The indictment in this case makes no such charges.

Since the judgment is reversed upon the general grounds, it is not necessary to pass upon the special grounds of the motion for new trial. *Judgment reversed. All the Justices concur.*