In the Supreme Court of Georgia

Decided:  June 2, 2014

S13G1612.  BROWN v. THE STATE.

THOMPSON, Chief Justice.

Dwight T. Brown, a former President and CEO of Cobb Electric Membership Corporation ("Cobb EMC"), was indicted on January 6, 2011, on charges of theft by taking, filing false statements, conspiracy to defraud Cobb County and the Cobb County School District, and violations of the Georgia RICO statute.  These charges stemmed from allegations that Brown stole millions of dollars in "patronage capital" from Cobb EMC's members, including Cobb County and the Cobb County School District.  On March 24, 2011, the trial court quashed the indictment on the ground that it was not returned in open court and the order was affirmed on appeal.  State v. Brown, 315 Ga. App. 282 (726 SE2d 764) (2012), aff'd, 293 Ga. 493 (748 SE2d 376) (2013).

Meanwhile, anticipating a second indictment, Brown filed a motion to challenge the grand jury array on May 27, 2011, in an attempt to remove Cobb

EMC members from the grand jury.[1]  The State did not respond to the motion and no ruling was entered upon it.  On July 7, 2011, the State obtained a new indictment against Brown setting forth the same charges alleged in the previous indictment, as well as additional charges of influencing and threatening witnesses.

Brown filed a motion to abate the second indictment on the ground the grand jury was composed in part of persons, i.e., Cobb EMC members, who were victims of the alleged crimes.  The trial court denied Brown's plea in abatement and the Court of Appeals affirmed.  Brown v. State, 322 Ga. App. 446 (745 SE2d 699) (2013).  We granted Brown's petition for a writ of certiorari and posed this question:  Did the Court of Appeals err in affirming the denial of the defendant's challenge to the impartiality of the grand jurors who returned his second indictment?  Our straightforward answer to this question is "no."

> In determining whether or not grand jury proceedings are biased against an accused, it is an unquestioned rule of law that members of a grand jury may not be selected in a manner that discriminates against persons of a particular race or religion.  However, "[t]he basic theory of the functions of the grand jury, does not require that

[1] Four of the twenty members of the grand jury were members of Cobb EMC.

grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors. The Sixth Amendment to the Constitution of the United States expressly provides that the trial jury in a criminal case must be 'impartial.' No such requirement in respect to grand juries is found in the Fifth Amendment, which contains the guaranty against prosecutions for infamous crimes unless on a presentment or indictment of a grand jury. It is hardly necessary to be reminded that each of these Amendments was adopted at the same time as a part of the group consisting of the first ten Amendments. A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members. In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason." United States v. Knowles, 147 FSupp. 19, 21 (1957).

Creamer v. State, 150 Ga. App. 458, 460-461 (258 SE2d 212 (1979). See also In re Hensley, 184 Ga. App. 625, 627-628 (362 SE2d 432) (1987) ("It is the statutory duty of grand jurors to examine or make presentments of offenses which come to their knowledge either before or after they have been sworn. OCGA § 15-12-74.")

In Georgia, our approach to grand jury challenges depends on whether the challenge is propter defectum or propter affectum. See generally Farrar v. State, 187 Ga. 401, 403 (200 SE 803) (1939). If propter defectum, i.e., if a grand juror

3

lacks the capacity to serve, a timely filed plea in abatement will lie. See, e.g., State v. Dempsey, 290 Ga. 763, 764 (1) (727 SE2d 670) (2012) (plea in abatement sustained because elected member of city council not qualified to serve as grand juror); Reich v. State, 53 Ga. 73 (1874) (plea in abatement successful because grand juror was alien and, therefore, incompetent to serve). A claim of disqualification propter affectum, on the other hand, i.e., for favor or bias in a particular case, provides no ground for a plea in abatement. See Sallie v. State, 276 Ga. 506, 514 (14) (578 SE2d 444) (2003) (grand jury is purely accusatory body and grand juror is not incompetent to serve because he heard or read about the case or formed or expressed an opinion about guilt); In re Hensley, 184 Ga. App. 625, 627 (2), supra (grand juror need not be impartial and unbiased). Compare Lowman v. State, 197 Ga. App. 556 (398 SE2d 832) (1990) (member of electric membership corporation disqualified from serving as petit juror in case in which corporation had interest) (decided prior to the 2009 enactment of OCGA § 15-12-137.1) with Simpson v. State, 100 Ga. App. 726 (112 SE2d 314) (1959) (member of electric membership corporation could serve as grand juror in case in which corporation had interest).

In this case, Brown's plea in abatement claimed four grand jurors were

4

members of Cobb EMC and presumably biased.  Because this was a challenge propter affectum, Brown's motion in abatement was properly denied.  See, e.g., Black v. State, 264 Ga. 550,  551 (2) (448 SE2d 357) (1994) (motion to quash indictment properly denied even though sister-in-law of sheriff, who was victim of aggravated assault committed by defendant, was a grand juror); Fisher v. State, 93 Ga. 309 (20 SE 329) (1893) (plea in abatement was not successful where defendant accused of breaking and entering railroad company car and grand juror was agent of company);  Lascelles v. State, 90 Ga. 347, 372-375 (16 SE 945) (1892) (plea in abatement denied where member of grand jury related by affinity to prosecutor); Simpson v. State, supra (plea in abatement failed even though grand jurors were members and stockholders of Satilla Rural EMC from which wire was allegedly stolen); Garnett v. State, 10 Ga. App. 109 (72 SE 951) (1911) (plea in abatement unsuccessful where grand juror was member of firm whose store was alleged to have been burglarized).

Relying upon dicta in Bitting v. State, 165 Ga. 55 (139 SE 877) (1927), Brown asserts it was incumbent upon the trial court to remove members of the Cobb EMC from the grand jury.  In this regard, Brown points to this language:

It would seem that the main reason why the court should remove

5

partial grand jurors from the panel before the inquiry begins is the inexpediency of putting the public to the trouble and expense of trying an alleged defendant, unless those who are impartial are willing to accuse him on the testimony which the prosecution, or State's counsel, is able to produce against him; and further, there is incidentally the other reason that an injustice is done to the individual citizen when he is subjected to accusation of crime by those who would be more than normally willing to exalt bare unsupported suspicion into a reasonable ground for indictment and trial. For this reason it is proper that the court should in advance of the grand jury's action receive information from the defendant, from an amicus curiae, or from any other legitimate source, tending to show that certain of the grand jurors would likely be biased, and that he should purge the panel so as to make it impartial.

Id. at 63-64, quoting Hall v. State, 7 Ga. App. 115 (66 SE 390) (1909).

However, the Bitting Court continued:

But when the grand jury has acted, when the formal charge has been made and published, when the trouble and expense of the preparation for trial has been incurred, when the defendant has been arraigned and asked, 'Are you guilty or not guilty?'--when the injury that would result from the unjust accusation, if it is unjust, has been consummated, and there can be no vindication of the defendant except upon looking to the merits of the transaction, there is but a small quantum of justice, and less of expediency, in allowing him to say, 'Delay the trial, because the State is prosecuting me on the information of prejudiced persons.' If the accusation against the defendant is unjust and untrue, that fact can be established much more surely, satisfactorily, and quickly under the plea of not guilty than it can be by quashing the indictment, and ordering a new preliminary and inconclusive inquiry before another grand jury. Largely for these reasons, as well as for others, the courts of the country have been disinclined to allow defendants, by plea in

abatement, to urge that one or more of the grand jurors who acted upon the indictment were disqualified. The tendency has been to cut off collateral inquiry, and to allow the main issue to proceed.

Id.

Thus, placed in context, it is clear that <u>Bitting</u> made no attempt to formulate or promulgate a precept requiring courts to remove grand jurors upon a showing of likely bias. Rather, a proper reading of <u>Bitting</u> and similar cases[2] demonstrates that any suggestion that a court should purge potentially partial panel members was primarily to avoid the trouble and expense associated with trying a defendant who may have been indicted without a proper legal foundation. These cases reflect an understanding of the inefficiency and practical difficulties inherent in propter affectum challenges to grand jurors. Nothing in these cases contradicts the established view that, unlike a petit jury, a grand jury is an accusatory or prosecutorial body.[3] Therefore, even if a grand juror is related within the prohibited degree to a party interested in the

---

[2] See, e.g., <u>Isaacs v. State</u>, 259 Ga. 717, 719 (386 SE2d 316) (1989) (assuming, without deciding, remedial action may be necessary in some cases of grand jury bias); <u>Hall v. State</u>, 7 Ga. App. 115, supra.

[3] See <u>Bitting</u>, supra ("In investigating crimes the grand jurors are performing a function for the benefit of the State"); <u>Creamer v. State</u>, supra (grand jury is accusatory body); <u>Bartram v. State</u>, 364 A.2d 1119, 1157 (Md. App. 1976), aff'd, 374 A.2d 1144 (Md. 1977) (grand jury is not a judicial arm but a prosecutorial arm).

7

indictment, see OCGA § 15-12-70, a plea in abatement will not lie. Farrar v. State, supra at 403-404. See also Decoteau v. State, 302 Ga. App. 451, 454 (2010) (that grand juror was defendant's estranged wife did not afford grounds for dismissal of charge or grant of new trial); Bolds v. State, 195 Ga. App. 586 (394 SE2d 593) (1990) (that district attorney's aunt should have been disqualified from serving as grand juror was not a viable ground to quash the indictment).[4]

Citing Isaacs v. State, 259 Ga. 717, supra, Brown urges us to hold that courts should act to remove a grand juror who is more than simply biased, as when he or she is shown to have a direct, pecuniary interest in the outcome of a proceeding. We disagree. In Isaacs, this Court observed: "Generally, in the absence of a controlling statutory provision, a person is not disqualified or incompetent to serve as a grand juror by reason of bias or prejudice on his part,

---

[4] This is not to say that a grand juror related within the prohibited degree should continue to serve. After all, grand jurors "related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree" should be disqualified. OCGA § 15-12-70. However, a grand juror's disqualification does not afford a ground for a plea in abatement. Farrar v. State, supra. Grand jurors should be educated with respect to disqualification and encouraged to govern themselves as required by our statutes. See OCGA § 15-18-6 (2) (district attorneys have a duty "[t]o attend on the grand juries, advise them in relation to matters of law").

by the fact that he has heard or read about the case under investigation or has even formed or expressed an opinion as to the guilt of the accused, or by his interest in a prosecution other than a direct pecuniary interest." Id. at 719 (quoting 38 AmJur2d 951, Grand Jury, § 7). Because the issues raised in Isaacs did not pertain to a pecuniary interest on the part of grand jurors, this observation was dictum. Moreover, our courts have not relied upon this statement in subsequent cases involving grand jury service. At any rate, a challenge based on a grand juror's pecuniary interest is plainly propter affectum and cannot be raised by plea in abatement.

Finally, Brown contends that even if the indictment was not subject to challenge by a plea in abatement, it was incumbent upon the trial court to remove the Cobb EMC grand jurors from the grand jury pool when he filed his motion to challenge, i.e., before the second indictment was returned.[5] However, Brown failed to obtain a ruling on his motion to challenge from the trial court.

---

[5] This argument is based on this suggestive language in Bitting: "[I]t is proper that the court should in advance of the grand jury's action receive information from the defendant, from an amicus curiae, or from any other legitimate source, tending to show that certain of the grand jurors would likely be biased, and that he should purge the panel so as to make it impartial."

Thus, this contention was waived, Smith v. Stacey, 281 Ga. 601, 602 (642 SE2d 28 (2007), and the only appealable order to be addressed concerns the propriety of Brown's plea in abatement.

Judgment affirmed. Melton, Nahmias, Blackwell, J.J., and Judge Michael L. Karpf concur. Benham and Hunstein, J.J, dissent. Hines, P.J., not participating.

S13G1612. BROWN v. THE STATE.

BLACKWELL, Justice, concurring.

It is no ground for a plea in abatement that a true bill of indictment was returned by grand jurors disqualified *propter affectum*, and this settled principle has been a part of our common law for more than a century. See, e.g., Fisher v. State, 93 Ga. 309, 309-310 (20 SE 329) (1894); Lascelles v. State, 90 Ga. 347, 372-375 (3) (16 SE 945) (1892); Williams v. State, 69 Ga. 11, 27-28 (5) (1882); Betts v. State, 66 Ga. 508, 514-515 (6) (1881); Garnett v. State, 10 Ga. App. 109, 111-112 (1) (72 SE 951) (1911); Hall v. State, 7 Ga. App. 115, 116-118 (1) (66 SE 390) (1909). Through the years, our Court and the Court of Appeals have adhered consistently to this principle. See, e.g., Black v. State, 264 Ga. 550, 552 (2) (448 SE2d 357) (1994); Smith v. State, 203 Ga. 569, 569 (1) (47 SE2d 579) (1948); Farrar v. State, 187 Ga. 401, 403-404 (1) (200 SE 803) (1939); Bitting v. State, 165 Ga. 55, 59-64 (2) (139 SE 877) (1927); Bolds v. State, 195 Ga. App. 586, 586-587 (394 SE2d 593) (1990). And although our General Assembly has undertaken by legislation to specify circumstances in which grand jurors are disqualified *propter affectum*, see, e.g., OCGA § 15-12-70, the General

Assembly has seen fit to leave undisturbed the principle that such a disqualification is no ground for a plea in abatement. When a principle of the common law has been settled so well for so long, and especially when the General Assembly has legislated upon the same subject without disturbing the principle, the courts generally ought not abandon the principle solely upon the ground that it may be unsound policy. See Robeson v. Intl. Indem. Co., 248 Ga. 306, 309-310 (4) (b) (282 SE2d 896) (1981).

To be sure, there are good reasons to doubt that the principle to which we adhere today reflects sound policy. Although the majority is right that grand jurors need not be wholly unbiased and impartial, see Creamer v. State, 150 Ga. App. 458, 460-461 (1) (258 SE2d 212) (1979), it nevertheless is unseemly for grand jurors to pass upon an indictment that charges the accused with crimes of which the same grand jurors are alleged to be victims. For one who has been indicted by grand jurors disqualified *propter affectum*, the only remedy for the wrongful indictment afforded by the common law — a public and speedy trial by an unbiased and impartial petit jury — is hardly a complete remedy. Even if the accused is eventually acquitted at trial, his acquittal does not keep him from the trouble and expense to which he has been put by the wrongful indictment,

2

and it cannot ensure the restoration of his reputation, which may have been sullied by the wrongful indictment. Our precedents express a concern that permitting a more complete remedy — a plea in abatement or motion to quash — would be too great a burden for the criminal justice system, but federal law permits such a remedy, see Federal Rule of Criminal Procedure 6 (b) (2), and the work of the federal courts does not seem to have been seriously impaired as a result. Perhaps the time has come to afford a more complete remedy for an indictment by grand jurors disqualified *propter affectum*. But whether a more complete remedy is worth its costs is fundamentally a political question, and it is one, therefore, that is committed principally to the political branches. See Deal v. Coleman, 294 Ga. 170, 174, n.11 (1) (a) (751 SE2d 337) (2013). With the hope that the General Assembly will reconsider the principle of the common law on which our decision rests, I concur fully in the opinion of the Court.

S13G1612.  BROWN v. THE STATE.

HUNSTEIN, Justice, dissenting.

I firmly believe that the grand jury's duty to protect individuals against unfounded criminal prosecutions requires grand jurors to be unbiased and impartial, particularly where as in this case, grand jurors are victims of the alleged crimes of which the accused has been charged.  I believe that the accused may assert his right and challenge grand juror bias by filing a pretrial motion.  Because Brown filed timely pretrial motions and demonstrated grand juror bias in this case, I must respectfully dissent.

1.  An Unbiased & Impartial Grand Jury

"An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U. S. 359, 363 (76 SCt 406, 100 LE 397) (1956); see Lawn v. United States, 355 U. S. 339 (I) (78 SCt 311, 2 LE2d 321) (1958); see also Beck v. Washington, 369 U. S. 541 (I) (82 SCt 955, 8 LE 2d 98) (1962) (Douglas, J., dissenting) ("It is well settled that when either the Federal Government or a State uses a grand jury, the accused is entitled to those

procedures which will insure, so far as possible, that the grand jury selected is fair and impartial."). "A number of courts have interpreted this line of Supreme court cases as recognizing a constitutional requirement that an indictment be returned by an unbiased grand jury." United States v. Finley, 705 FSupp. 1297, 1307 (IV) (N.D. Ill. 1988); see, e.g., United States v. Burke, 700 F2d 70, 82 (2d Cir. 1983) ("When a person is brought before the grand jury and charged with a criminal offense, that individual is constitutionally entitled to have his case considered by an impartial and unbiased grand jury."); United States v. Serubo, 604 F2d 807, 816 (3d Cir.1979); United States v. Waldbaum, Inc., 593 FSupp. 967, 970 (II) (E.D.N.Y. 1984); United States v. Gold, 470 FSupp. 1336, 1345 (N.D. Ill.1979); State v. Murphy, 538 A2d 1235 (II) (N.J. 1988); see also State v. Barnhart, 563 SE2d 820 (II) (W. Va. 2002); State v. Emery, 642 P2d 838, 851 (Ariz. 1982). Accordingly, "it is settled that the Fifth Amendment requires that an indictment be returned by a legally constituted and unbiased grand jury." Waldbaum, Inc., 593 FSupp. at 970 (collecting cases).

The purpose of the grand jury is to "provide a fair method for instituting criminal proceedings against persons believed to have committed crimes" with a "pledge[] to indict no one because of prejudice and to free no one because of

2

special favor." Costello, 350 U.S. at 362.   The United States Supreme Court has recognized that grand jurors play a dual role as "a body of accusers sworn to discover and present for trial persons suspected of criminal wrongdoing and . . . a protector of citizens against arbitrary and oppressive governmental action." United States v. Calandra, 414 U. S. 338, 343 (II) (94 SCt 613, 38 LE2d 561) (1974); Branzburg v. Hayes, 408 U. S. 665, 686-87 (II) (92 SCt 2646, 33 LE2d 626) (1972) (the role of the grand jury is to determine "if there is probable cause to believe that a crime has been committed and [to] protect[] citizens against unfounded criminal prosecutions").

> We have recognized that the grand jury
>
> historically has been thought of as the primary security to the innocent against "hasty, malicious and oppressive prosecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will. [Cit.]" Wood v. Georgia, 370 U. S. 375, 390 (82 SC 1364, 8 LEd2d 569) (1962).

Cochran v. State, 256 Ga. 113, 117 (344 SE2d 402) (1986) (Smith, J., concurring). Consistent with this responsibility to protect citizens against unfounded criminal prosecutions, we require grand jurors in Georgia to take an

3

oath swearing to not present anyone "from envy, hatred, or malice."  OCGA §

15-12-67 (b).

Furthermore, grand jurors are prohibited from serving when they are

"related by consanguinity or affinity to any party interested in the result of the

case or matter within the sixth degree as computed according to the civil law."

OCGA § 15-12-70.  We have also acknowledged that a person is disqualified

from serving on a grand jury if that individual has a direct pecuniary interest in

the prosecution.  Isaacs v. State, 259 Ga. 717 (2) (386 SE 2d 316) (1989).

Additionally, we have noted, albeit in dicta, that grand jurors should be

impartial.

> [A]n injustice is done to the individual citizen when he is subjected
> to accusation of crime by those who would be more than normally
> willing to exalt bare unsupported suspicion into a reasonable
> ground for indictment and trial.  For this reason it is proper that the
> court should, in advance of the grand jury's action, receive
> information from the defendant, from an amicus curiae, or from any
> other legitimate source, tending to show that certain of the grand
> jurors would likely be biased, and that he should purge the panel, so
> as to make it impartial.

Bitting v. State, 165 Ga. 55, 63 (2) (139 SE 877) (1927); see also Williams v.

State, 69 Ga. 11 (5) (1882) (recognizing that it may be appropriate in a

4

particular case to challenge grand juror bias), overruled in part on other grounds by Burns v. State, 89 Ga. 527 (6) (15 SE 748) (1892).

The majority quotes United States v. Knowles, 147 FSupp. 19, 21 (D.D.C. 1957), as quoted by the Court of Appeals in Creamer v. State, 150 Ga. App. 458, 460-61 (258 SE2d 212) (1979), for the position that grand jurors need not be impartial or unbiased. I "suspect that this principle is rooted more in history than in justice." Murphy, 538 A2d at 1239 (rejecting the argument that a grand juror's prior opinion about the guilt of the accused does not serve to disqualify him). Furthermore, the majority's position and reliance on Knowles is in line with the view that grand jurors function as "purely an accusatory body." Niki Kuckes, "The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury," 94 GEO. L.J. 1265, 1297 (2006). However, I agree with the competing view, as expressed by other courts cited above, that bias rules are applicable to grand jurors based on the grand jury's role to protect citizens. See id. (discussing competing views and noting that a "recurrent grand jury battle has centered on whether a prosecutorial or judicial notion of 'bias' should be applied to grand jurors"); see also Packer v. Superior Court, 201 Cal.App.4th 152, 168 (2011) (noting that there is "hardly a national consensus"

on the issue of whether due process demands that grand jurors should be free from bias).

Therefore, in order to effectively protect against prosecuting citizens based on an intimidating power, malice, personal ill will, envy, or hatred, I agree with the line of cases cited above that grand jurors must be impartial and unbiased. Accordingly, I would overrule any authority from this Court and the Court of Appeals to the extent it holds otherwise.

2. Challenges Propter Affectum for Grand Jury Bias Are Permissible

The majority cites a string of cases for the position that a claim for grand juror disqualification propter affectum, for favor or bias, provides no ground for a plea in abatement. This rule can be traced to Betts v. State, 66 Ga. 508, 509 (1881); see also Hall v. State, 7 Ga. App. 115 (1) (66 SE 390) (1909) (commenting that the earliest adjudication of this issue is found in Betts). In Betts, the defendant filed a plea in abatement at his arraignment arguing that he ought not to be compelled to plead to the indictment because the foreman of the grand jury was biased. 66 Ga. at 511. The foreman's bias was due to the fact that he was a member of the coroner's jury, which sat to inquire into the cause of death of the deceased, and this coroner's jury had determined that the

6

defendant had killed the deceased. Id. The trial court overruled the defendant's plea, and we affirmed. Id. at 514. The Court explained that a challenge propter affectum would not abate the plea where a grand juror had already formed an opinion about the accused because a grand juror must be allowed to have an informed opinion and because a plea in abatement would cause embarrassment and delay. Id. at 515.

Thus, Betts demonstrates that a plea in abatement based on disqualification propter affectum to challenge grand juror bias is not possible because grand jurors may in fact be biased; there is no right to an unbiased grand jury and therefore no proper means for challenging such. See Garnett v. State, 10 Ga. App. 109 (1) (72 SE 951) (1911) (explaining that the grand jury is merely a court of inquiry and the disqualification of a grand juror cannot be achieved by plea in abatement). However, under my view that our citizens have the right to an unbiased and impartial grand jury, a propter affectum challenge would be a proper means of contesting grand juror bias. Otherwise, the right rings hollow.[1]

---

[1] The majority states that "grand juries should be encouraged to govern themselves," including in cases where a grand juror is prohibited from serving under OCGA § 15-12-70. Id. (grand jurors disqualified from acting or serving when such

3. Challenging Grand Juror Bias

Pursuant to OCGA § 17-7-110, "[a]ll pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court." This statute, which post-dates all the cases cited by the majority for the position that propter affectum challenges cannot be raised post-indictment, makes no distinction based on the type of motion, or whether the challenge is propter defectum or affectum. See State v. Dempsey, 290 Ga. 763, 765 (1) (727 SE2d 670) (2012) (holding that any prior requirement that a propter defectum challenge be made pre-indictment is no longer valid under § 17-7-110). Thus, a pretrial motion challenging grand jury bias is proper.

Furthermore, to the extent that pre-indictment motions do not qualify as "pretrial motions" under OCGA § 17-7-110, they would still be proper because they were filed before the indictment was issued. We have recognized that if any propter affectum challenge exists at all, it must be made before the

jurors are related by consanguinity or affinity to any party interested in the result of the case within the sixth degree). This is hardly a sufficient or practical remedy for the accused, and as demonstrated by this case, self-governance is not reliable. Therefore, I would find that propter affectum challenges, rather than self-governance, are a more appropriate method for the accused to challenge grand jury bias.

indictment is issued. <u>Bitting</u>, 165 Ga. at 64 (holding that a challenge propter affectum was not "a good ground for a plea to abate the accusation," but noting that it is proper for the court to hear challenges to grand jurors based on bias and partiality "in advance of the grand jury's action"); <u>Lascelles v. State</u>, 90 Ga. 347 (3) (16 SE 945) (1892) (plea in abatement properly overruled where the accused had an opportunity to challenge the grand jury but failed to do so, and thus implicitly recognizing that a propter affectum challenge may be made pre-indictment); <u>Williams</u>, 69 Ga. at 28 (propter affectum challenge to the plea "came too late" but recognizing that "[i]f, however, it be deemed important in a particular case to fight the prosecution *in limine*, diligence requires that the challenge be made before the bill is found."); <u>Smith v. State</u>, 62 Ga. App. 498, 500 (1) (8 SE2d 797) (1940) (citing <u>Williams</u> and <u>Lascelles</u> with approval and finding no evidence to support plea in abatement or any allegation that the defendant had no opportunity to challenge the grand jurors before the indictment was found); <u>Stapleton v. State</u>, 19 Ga. App. 36 (1) (90 SE 1029) (1916) (holding

9

that challenge was "propter affectum, and should have been urged before the indictment was found").[2]

4. Brown Timely Challenged Grand Juror Bias

Brown filed three motions to challenge the grand jury poll before the indictment was issued against him on July 7, 2011, seeking to disqualify grand jurors who were also members of Cobb EMC from serving on the grand jury.

---

[2]Notably, in all of but one of the cases cited by the majority for the position that a challenge propter affectum provides no ground for plea in abatement, the challenge was filed post indictment. See Black v. State, 264 Ga. 550 (2) (448 SE2d 357) (1994) (where the defendant filed a motion for new trial alleging a defective indictment, disqualification of a grand juror pursuant to OCGA § 15-12-70 was not viable); Fisher v. State, 93 Ga. 309 (1) (20 SE 329) (1894) (no challenge propter affectum where the defendant "had warning to challenge the juror before the bill was found" but failed to do so); Lascelles, 90 Ga. at 372-375 (discussed supra); Simpson v. State, 100 Ga. App. 726 (1) (112 SE2d 314) (1959) (affirming dismissal of plea in abatement because the defendant failed to make a timely challenge and filed his plea in abatement "some time after the indictment had been returned"); Garnett, 10 Ga. App. at 111 (affirming dismissal of plea in abatement where it was filed before "pleading to the merits"); see also Sallie v. State, 276 Ga. 506 (14) (578 SE2d 444) (2003) (finding any error by the grand jury to be harmless because a trial jury had found the defendant guilty beyond a reasonable doubt).

The only case cited by the majority where the defendant filed a pre-indictment motion challenging grand juror bias is In re Hensley, 184 Ga. App. 625 (362 SE2d 432) (1987). In that case, the court denied the defendant's motion, relying on Knowles, which, as I have already shown in Section 1, reflects the position that grand juries need not be unbiased. In re Hensley, 184 Ga. App. at 627. Accordingly, I believe In re Hensley should be overruled. Even if In re Hensley were not overruled, it is distinguishable because the grand jurors in question were not victims of the crimes for which the defendant was indicted, unlike the facts in this case. 184 Ga. App. at 626-27.

10

The court never ruled on any of these motions. After the grand jury handed down the indictment, Brown filed a motion for abatement and/or dismiss for improper use of disqualified grand jurors, reasserting his arguments from his previous motions to challenge and listing by name the grand jurors to be disqualified because they were EMC members. Pursuant to OCGA § 17-7-110, his pre-indictment challenges to disqualify and his motion for abatement and were timely. See Dempsey, 290 Ga. at 765.

5. Grand Jurors Should Be Deemed Biased and Partial in This Case

The grand jury that issued the July 7, 2011, indictment against Brown should be deemed biased and partial. The indictment asserted on its face that Brown allegedly stole millions of dollars from Cobb EMC members and that Brown gave false statements to conceal these thefts from Cobb EMC members. The indictment claimed that Cobb EMC members suffered financial loss because of Brown's alleged theft and racketeering.[3] Four persons who served on the grand jury, including the foreperson, who indicted Brown on July 7, were

---

[3]According to the indictment, Cobb EMC is owned by its members; it does not issue stock. Under the Cobb EMC bylaws, all revenue in excess of operating costs and expenses is called "patronage capital," and this capital is the property of members. The indictment alleges that Brown stole millions of dollars in patronage capital.

11

members of the Cobb EMC. As the victims of the alleged theft and racketeering committed by Brown, Cobb EMC members had a direct financial stake in the prosecution of Brown.

Additionally, the trial court denied Brown's motion to challenge the grand jury poll in part because Brown challenged only four grand jurors, not all of the grand jurors. The trial court explained that 16 grand jurors comprised an entire grand jury and 12 grand jurors are required to return a true bill of indictment. The trial court found that because the vote was unanimous, "even if the votes of the grand jurors in question [were] not counted, the sixteen grand jurors who voted in favor of returning a true bill of indictment [were] sufficient as a matter of law."

Yet, we cannot know how the four grand jurors, particularly the Cobb EMC grand juror who served as the foreperson, may have influenced the other grand jurors. Due to the broad discretionary power of the grand jury to frame the indictment and the nature of the criminal proceedings to come, the potential for infecting the other grand jurors is self-evident and too high a risk to dismiss merely by finding there were other sufficient votes. See Dempsey, 290 Ga. at 764 (where one grand juror is incompetent to serve, the indictment is void no

12

matter how many grand jurors have found the bill to be true); State v. Schenkolewski, 693 A2d 1173, 1191 (IV) (N.J. Super. Ct. App. Div. 1997) (affirming trial court's dismissal of the indictment because two grand jurors were potentially biased and finding that "it did not matter that one juror had been excused and the other one disqualified from voting, because the potential for tainting the other jurors was self-evident"). Thus, as victims of the alleged crimes, the four grand jury members that participated in the issuance of the July 7, 2011, indictment should be deemed biased or prejudiced against Brown, and the entire grand jury was infected.

From the majority's ruling, "an injustice [has been] done to [Brown] when he [was] subjected to accusation of crime by those who would be more than normally willing to exalt bare unsupported suspicion into a reasonable ground for indictment and trial" due to the fact that the grand jurors were victims, or influenced by victims, of the crimes for which Brown was indicted. See Bitting, 165 Ga. at 63. The majority's opinion tightly closes the door against any challenge to grand jury bias, even where victims of the crimes of the accused serve on the grand jury and even where the accused files a pre-indictment

13

challenge.  This creates the exact injustice that the Court warned against almost a century ago in <u>Bitting</u>.  For all of these reasons, I respectfully dissent.

I am authorized to state that Justice Benham joins in this dissent.