Thompson, Chief Justice.
Dwight T. Brown, a former President and CEO of Cobb Electric Membership Corporation (“Cobb EMC”), was indicted on January 6, 2011, on charges oftheft by taking, filing false statements, conspiracy to defraud Cobb County and the Cobb County School District, and violations of the Georgia RICO statute. These charges stemmed from *241 allegations that Brown stole millions of dollars in “patronage capital” from Cobb EMC’s members, including Cobb County and the Cobb County School District. On March 24, 2011, the trial court quashed the indictment on the ground that it was not returned in open court, and the order was affirmed on appeal. State v. Brown, 315 Ga. App. 282 (726 SE2d 764) (2012), aff'd, 293 Ga. 493 (748 SE2d 376) (2013).
Meanwhile, anticipating a second indictment, Brown filed a motion to challenge the grand jury array on May 27, 2011, in an attempt to remove Cobb EMC members from the grand jury.[1] The State did not respond to the motion, and no ruling was entered upon it. On July 7, 2011, the State obtained a new indictment against Brown setting forth the same charges alleged in the previous indictment, as well as additional charges of influencing and threatening witnesses.
Brown filed a motion to abate the second indictment on the ground the grand jury was composed in part of persons, i.e., Cobb EMC members, who were victims of the alleged crimes. The trial court denied Brown’s plea in abatement, and the Court of Appeals affirmed. Brown v. State, 322 Ga. App. 446 (745 SE2d 699) (2013). We granted Brown’s petition for a writ of certiorari and posed this question: Did the Court of Appeals err in affirming the denial of the defendant’s challenge to the impartiality of the grand jurors who returned his second indictment? Our straightforward answer to this question is “no.”
In determining whether or not grand jury proceedings are biased against an accused, it is an unquestioned rule of law that members of a grand jury may not be selected in a manner that discriminates against persons of a particular race or religion. However, “[t]he basic theory of the functions of the grand jury, does not require that grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors. The Sixth Amendment to the Constitution of the United States expressly provides that the trial jury in a criminal case must be “impartial.” No such requirement in respect to grand juries is found in the Fifth Amendment, which contains the guaranty against prosecutions for infamous crimes unless on a presentment or indictment of a grand jury. It is hardly necessary to be reminded that each of these Amendments *242 was adopted at the same time as a part of the group consisting of the first ten Amendments. A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members. In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason.” United States v. Knowles, 147 FSupp. 19, 21 (1957).
Creamer v. State, 150 Ga. App. 458, 460-461 (258 SE2d 212) (1979). See also In re Hensley, 184 Ga. App. 625, 627-628 (362 SE2d 432) (1987) (“It is the statutory duty of grand jurors to examine or make presentments of offenses which come to their knowledge either before or after they have been sworn. OCGA § 15-12-74.”).
In Georgia, our approach to grand jury challenges depends on whether the challenge is propter defectum or propter affectum. See generally Farrar v. State, 187 Ga. 401, 403 (200 SE 803) (1939). If propter defectum, i.e., if a grand juror lacks the capacity to serve, a timely filed plea in abatement will lie. See, e.g., State v. Dempsey, 290 Ga. 763, 764 (1) (727 SE2d 670) (2012) (plea in abatement sustained because elected member of city council not qualified to serve as grand juror); Reich v. State, 53 Ga. 73 (1874) (plea in abatement successful because grand juror was alien and, therefore, incompetent to serve). A claim of disqualification propter affectum, on the other hand, i.e., for favor or bias in a particular case, provides no ground for a plea in abatement. See Sallie v. State, 276 Ga. 506, 514 (14) (578 SE2d 444) (2003) (grand jury is purely accusatory body and grand juror is not incompetent to serve because he heard or read about the case or formed or expressed an opinion about guilt); In re Hensley, 184 Ga. App. at 627 (2), supra (grand juror need not be impartial and unbiased). Compare Lowman v. State, 197 Ga. App. 556 (398 SE2d 832) (1990) (member of electric membership corporation disqualified from serving as petit juror in case in which corporation had interest) (decided prior to the 2009 enactment of OCGA § 15-12-137.1) with Simpson v. State, 100 Ga. App. 726 (112 SE2d 314) (1959) (member of electric membership corporation could serve as grand juror in case in which corporation had interest).
In this case, Brown’s plea in abatement claimed four grand jurors were members of Cobb EMC and presumably biased. Because this was a challenge propter affectum, Brown’s motion in abatement was properly denied. See, e.g., Black v. State, 264 Ga. 550, 551 (2) (448 *243 SE2d 357) (1994) (motion to quash indictment properly denied even though sister-in-law of sheriff, who was victim of aggravated assault committed by defendant, was a grand juror); Fisher v. State, 93 Ga. 309 (20 SE 329) (1893) (plea in abatement was not successful where defendant accused of breaking and entering railroad company car and grand juror was agent of company); Lascelles v. State, 90 Ga. 347, 372-375 (16 SE 945) (1892) (plea in abatement denied where member of grand jury related by affinity to prosecutor); Simpson v. State, supra (plea in abatement failed even though grand jurors were members and stockholders of Satilla Rural EMC from which wire was allegedly stolen); Garnett v. State, 10 Ga. App. 109 (72 SE 951) (1911) (plea in abatement unsuccessful where grand juror was member of firm whose store was alleged to have been burglarized).
Relying upon dicta in Bitting v. State, 165 Ga. 55 (139 SE 877) (1927), Brown asserts it was incumbent upon the trial court to remove members of the Cobb EMC from the grand jury. In this regard, Brown points to this language:
It would seem that the main reason why the court should remove partial grand jurors from the panelbefore the inquiry begins is the inexpediency of putting the public to the trouble and expense of trying an alleged defendant, unless those who are impartial are willing to accuse him on the testimony which the prosecution, or State’s counsel, is able to produce against him; and further, there is incidentally the other reason that an injustice is done to the individual citizen when he is subjected to accusation of crime by those who would be more than normally willing to exalt bare unsupported suspicion into a reasonable ground for indictment and trial. For this reason it is proper that the court should in advance of the grand jury’s action receive information from the defendant, from an amicus curiae, or from any other legitimate source, tending to show that certain of the grand jurors would likely be biased, and that he should purge the panel so as to make it impartial.
Id. at 63-64, quoting Hall v. State, 7 Ga. App. 115 (66 SE 390) (1909). However, the Bitting Court continued:
But when the grand jury has acted, when the formal charge has been made and published, when the trouble and expense of the preparation for trial has been incurred, when the defendant has been arraigned and asked, “Are you guilty or not guilty?” — when the injury that would result from the *244 unjust accusation, if it is unjust, has been consummated, and there can be no vindication of the defendant except upon looking to the merits of the transaction, there is but a small quantum of justice, and less of expediency, in allowing him to say, “Delay the trial, because the State is prosecuting me on the information of prejudiced persons.” If the accusation against the defendant is unjust and untrue, that fact can be established much more surely, satisfactorily, and quickly under the plea of not guilty than it can be by quashing the indictment, and ordering a new preliminary and inconclusive inquiry before another grand jury. Largely for these reasons, as well as for others, the courts of the country have been disinclined to allow defendants, by plea in abatement, to urge that one or more of the grand jurors who acted upon the indictment were disqualified. The tendency has been to cut off collateral inquiry, and to allow the main issue to proceed.
Id.
Thus, placed in context, it is clear that Bitting made no attempt to formulate or promulgate a precept requiring courts to remove grand jurors upon a showing of likely bias. Rather, a proper reading of Bitting and similar cases[2] demonstrates that any suggestion that a court should purge potentially partial panel members was primarily to avoid the trouble and expense associated with trying a defendant who may have been indicted without a proper legal foundation. These cases reflect an understanding of the inefficiency and practical difficulties inherent in propter affectum challenges to grand jurors. Nothing in these cases contradicts the established view that, unlike a petit jury, a grand jury is an accusatory or prosecutorial body.[3] Therefore, even if a grand juror is related within the prohibited degree to a party interested in the indictment, see OCGA § 15-12-70, a plea in abatement will not lie. Farrar v. State, supra at 403-404. See also Decoteau v. State, 302 Ga. App. 451, 454 (691 SE2d 328) (2010) (that grand juror was defendant’s estranged wife did not afford grounds for dismissal of charge or grant of new trial); Bolds v. State, *245 195 Ga. App. 586 (394 SE2d 593) (1990) (that district attorney’s aunt should have been disqualified from serving as grand juror was not a viable ground to quash the indictment).[4]
Citing Isaacs v. State, 259 Ga. 717, supra, Brown urges us to hold that courts should act to remove a grand juror who is more than simply biased, as when he or she is shown to have a direct, pecuniary interest in the outcome of a proceeding. We disagree. In Isaacs, this Court observed:
Generally, in the absence of a controlling statutory provision, a person is not disqualified or incompetent to serve as a grand juror by reason of bias or prejudice on his part, by the fact that he has heard or read about the case under investigation or has even formed or expressed an opinion as to the guilt of the accused, or by his interest in a prosecution other than a direct pecuniary interest.
Id. at 719 (quoting 38 AmJur2d 951, Grand Jury, § 7). Because the issues raised in Isaacs did not pertain to a pecuniary interest on the part of grand jurors, this observation was dictum. Moreover, our courts have not relied upon this statement in subsequent cases involving grand jury service. At any rate, a challenge based on a grand juror’s pecuniary interest is plainly propter affectum and cannot be raised by plea in abatement.
Finally, Brown contends that even if the indictment was not subject to challenge by a plea in abatement, it was incumbent upon the trial court to remove the Cobb EMC grand jurors from the grand jury pool when he filed his motion to challenge, i.e., before the second indictment was returned.[5] However, Brown failed to obtain a ruling on his motion to challenge from the trial court. Thus, this contention was waived, Smith v. Stacey, 281 Ga. 601, 602 (642 SE2d 28) (2007), and the only appealable order to be addressed concerns the propriety of Brown’s plea in abatement.

*246
Judgment affirmed.

Melton, Nahmias, Blackwell, JJ., and Judge Michael L. Karpf concur. Benham and Hunstein, JJ., dissent. Hines, P. J., not participating.

 Four of the twenty members of the grand jury were members of Cobb EMC.

 See, e.g., Isaacs v. State, 259 Ga. 717, 719 (386 SE2d 316) (1989) (assuming, without deciding, remedial action may be necessary in some cases of grand jury bias); Hall v. State, 7 Ga. App. 115, supra.

 See Bitting, supra (“In investigating crimes the grand jurors are performing a function for the benefit of the State[.]”); Creamer v. State, supra (grand jury is accusatory body); Bartram v. State, 364 A2d 1119, 1157 (Md. App. 1976), aff’d, 374 A2d 1144 (Md. 1977) (grand jury is not a judicial arm but a prosecutorial arm).

 This is not to say that a grand juror related within the prohibited degree should continue to serve. After all, grand jurors “related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree” shouldbe disqualified. OCGA § 15-12-70. However, a grand juror’s disqualification does not afford a ground for a plea in abatement. Farrar v. State, supra. Grand jurors should be educated with respect to disqualification and encouraged to govern themselves as required by our statutes. See OCGA § 15-18-6 (2) (district attorneys have a duty “[tjo attend on the grand juries, advise them in relation to matters of law”).

 This argument is based on this suggestive language in Bitting: “[I]t is proper that the court should in advance of the grand jury’s action receive information from the defendant, from an amicus curiae, or from any other legitimate source, tending to show that certain of the grand jurors would likely be biased, and that he should purge the panel so as to make it impartial.”